JOHN P. RAY, APPELLEE, v. SCHOOL DISTRICT OF LINCOLN, APPELLANT.

FILED DECEMBER 23, 1920. No. 21562.

1. Master and Servant: WORKMEN'S COMPENSATION ACT: "GAIN OR PROFIT." The term "gain or profit," as used in the workmen's compensation law, *held* to mean pecuniary gain or profit.

2. ———: ———: STATE EMPLOYEES. Employees of the state and of its governmental agencies, when not engaged in an enterprise carried on for pecuniary gain or profit, are not within the operation of the workmen's compensation law.

3. ——: ——: SCHOOL JANITOR. A janitor in the employ of a school district of the city of Lincoln *held* not covered by the act.

4. ——: ——: CONSTRUCTION. It is not for the court to say, where the language of a statute leads to logical conclusions, that the literal meaning will not be followed, simply because by its wording it does not embrace cases which, as to questions of policy, seem, for no good reason, to have been excluded.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Reversed and dismissed.*

*R. O. Williams,* for appellant.

*Holmes, Chambers & Mann, contra.*

FLANSBURG, J.

Action, based upon the workmen's compensation law, in which the plaintiff, an employee of the school district of the City of Lincoln, a municipal corporation, seeks to recover compensation for injuries sustained by him in the course of and growing out of that employment.

The question for decision is whether or not employees of the school district come within the compensation law. It is contended by the defendant that no employees of the state, or of any subdivision thereof, are within the law, except in those instances where they are employed in some enterprise carried on for pecuniary gain or profit.

The sections of the statute, particularly involved, are as follows:

Section 3647: "The provisions of this act shall apply to the state of Nebraska and every governmental agency created by it, and to every employer in this state employing one or more employees, in the regular trade, business, profession or vocation of such employer." Rev. St. 1913, as amended by Laws 1917, ch. 85.

Section 3655: "The following shall constitute 'employers' subject to the provisions of this article:

"(1) The state and every governmental agency created by it.

"(2) Every person, firm or corporation  * * *  who is engaged in any trade, occupation, business or profession."

Section 3656: "The terms 'employee' and 'workman' are used interchangeably and have the same meaning throughout this article, the said terms include the plural and all ages and both sexes, and shall be construed to mean:

"(1) Every person in the service of the state or of any governmental agency created by it, under any appointment or contract of hire, express or implied, oral or written, but shall not include any official of the state or any governmental agency created by it, who shall have been elected or appointed for a regular term of office, or to complete the unexpired portion of any regular term.

"(2) Every person in the service of an employer who is engaged in any trade, occupation, business or profession.

"(3) It shall not be construed to include any person whose employment is casual, *or not for the purpose of gain or profit by the employer,* or which is not in the usual course of the trade, business, profession or occupation of his employer." Rev. St. 1913, as amended by Laws 1917, ch. 85.

It is urged that the term "gain or profit" should not be construed in the ordinary sense of pecuniary gain or profit, but that the phrase should be held to designate any employment which should be found to be carried on for the benefit or advantage of the employer. We do not believe the statute capable of that construction. The original conception of workmen's compensation laws seems to have been based upon the principle that the servant should no longer be required to bear loss in consequence of personal injuries, sustained in and growing out of the service rendered his employer, since the benefit of that service, based in part upon the personal hazard and risk of loss to the servant, was received by the employer. It was not, however, intended that such loss should simply be shifted from the employee and saddled upon the employer, and he made to carry the burden alone, but that such loss through injuries, sustained by the employee, should be treated as a part of the cost of service to the employer, and he, in fixing the price of his product, could reimburse himself by pass-

Ray v. School District of Lincoln.

ing it on to the consumer, who received the ultimate bene-
fit. An employer, through the instrumentality of the enter-
prise carried on by him was declared to be the cause of all
accidents directly growing out of such enterprise, and
such laws prevented him from gaining pecuniary advantage
through such instrumentality, and required him to pay
those losses as a part of the expense cost of his under-
taking. It seems to have been for these reasons that work-
men's compensation laws, originally applied to industrial
accidents only, have been, in some instances, limited in
their operation to those enterprises which are carried on
for pecuniary gain.

Though it is true, as argued, that, in the case of employ-
ment by the state, the cost of service, including the payment
of compensation for injuries, is equitably passed on to
society through the process of taxation, still, it seems
clear to us, that fact does not affect nor alter the meaning
to be given to the terms now under consideration. Were
we to interpret the words "gain or profit" to mean benefit
or advantage, pecuniary or otherwise, that an employer
might receive through an employment carried on by him,
such meaning must apply not only to state employments
but also to all other employments covered by the statute.
That interpretation would only lead to uncertainty and
confusion, which, under the plain wording of the statute,
does not now exist.

That the phrase was intended to mean pecuniary gain
or profit finds some support in the following cases: *Allen
v. State,* 160 N. Y. Supp. 85; *Redfern v. Eby,* 102 Kan. 484;
*Gray v. Board of Commissioners of Sedgwick County,* 101
Kan. 195; *Sexton v. Public Service Commission,* 167 N. Y.
Supp. 493.

In this light and by reason of the common and ordinary
meaning of the words used, we believe the statute, on that
question, is not open to construction.

By a literal reading of the provisions of the statute in
connection with subdivision "(3)," last above quoted, the
term "employee" covers only such employees, whether in

the service of private enterprises or in that of the state, or of its subdivisions, as are employed for "gain or profit."

It is quite apparent that the "casual" employee in the service of the state, covered by subdivision "(3)" of the statute, just as in the case of other employment, was intended to be excluded from the act; also that any employee, who was not engaged in the regular business and activities carried on by the state and its subdivisions, was to be excluded. The term "employer" is expressly defined to include "the state and every governmental agency created by it," and, by reading that definition into the clause in question, the express language, as employed and interpreted by the legislature, would exclude from the operation of the law every employee of the state and of its subdivisions who is not employed "for the purpose of gain or profit by the state, or by any governmental agency created by it."

The plaintiff contends that, should the literal wording of the act confine the act, in its operation, to those employees only who are employed for pecuniary gain or profit of the state and its subdivisions, then the literal wording must be found to be in conflict with the express purpose and intent of the act, and that such intent must be allowed to prevail. By the earlier provision of the act, every person in the service of the state, except officers holding for a regular term of office, is mentioned as being included within its operation. That provision, however, is not more general in its terms than the like provison covering private employments. It is necessary for the court, then, first to determine, from the language used, whether there can be any logical reason for the exception, as applied to state employees, or whether the exception is out of harmony with the act and opposed to a clearly expressed intent to the contrary.

It is no doubt the rule, as stated in *State v. Drexel,* 75 Neb. 614, that the object of the court, when it construes an act of the legislature, is to ascertain the intention of the lawmakers and to follow that intention when clearly as-

certained, though it may conflict with the literal sense of the words used. When the literal wording leads to absurdity or to illogical or unjust conclusions, the intention of the legislature, as gathered from the entire act, will prevail. *Kearney County v. Hapeman,* 102 Neb. 550; *Cram v. Chicago, B. & Q. R. Co.,* 84 Neb. 607.

We conclude, however, that those rules are no aid to the court in the present case. It is not for the court to say, where the language of the statute leads to logical conclusions, that its literal wording will not be followed, simply because it does not embrace cases which seem, for no good reason, to have been excluded. It is true that the workmen's compensation law is broad in its application. It is not confined to hazardous employments and covers a great mass of employees, engaged in private enterprises, whose duties are similar to the duties of the great majority of state employees.. Clerical and office service is within the broad comprehension of the act. If the legislature, however, has not done so, the court cannot provide that the beneficent purposes of the act shall be extended to state employees who are not employed for gain or profit, though they may be found to be engaged in the same character of work, subjected to the same exposures, and whose loss through injury enters as much, in principle, into the actual cost of service as if the service were performed for a private enterprise, carried on for profit. We have repeatedly given the act, as to the classes of workers brought within it, a liberal construction, but the rule, allowing a liberal construction of a statute, does not warrant us in overriding its terms in order to widen the remedy or bring about objects or results not within its expressed intent.

It must be remembered that the state and its governmental agencies could not be held liable under the common law for personal injuries sustained by its servants in line of employment, though due to its own negligence, nor could such a recovery be had under the law as it existed in this state at the time of the enactment of the workmen's compensation act. The state could, however, be held for

injuries to its employees resulting from its negligence, when such employees were engaged in corporate enterprises carried on for profit. City water-works and lighting plants, which furnish service to individuals generally, are carried on for profit, and have been in the past subjected to the same duties and liabilities toward their employees as if they were privately owned enterprises of like nature. *Henry v. City of Lincoln*, 93 Neb. 331. There are many employees of such establishments distributed throughout the state in the various cities and towns. From the language of the statute, an intention may reasonably be inferred that that class of governmental employees, who had no right of recovery at common law against the state and its agencies for injuries sustained in the course of employment, have been excluded, and that the remedial features of the act have been extended to that class of cases only, employments carried on for profit, to which the common-law liability attached.

The primary object of compensation acts was to do away with the inadequacies and defects of the common-law remedies, to destroy the common-law defenses, and, in the employments affected, to give compensation, regardless of the fault of the employer. These remedies did not apply to state employees, not engaged in business enterprises carried on for profit, and the state employments, not within the common-law remedies, do not seem to have been expressly brought within the scope of our compensation law.

A statute in the state of Kansas specifically provides that municipal and county employees, who are not engaged for business gain or profit, shall not come within the act. We cannot say that the Kansas law is either absurd or unreasonable, for it follows the line of demarcation between those classes of cases where recovery could be had at common law, and those classes where such recovery was not allowed. The language of our statute is in accord with an intent and purpose, on the part of the legislature, to follow that line of demarcation.

Ray v. School District of Lincoln.

A case very similar to the one under consideration is that of *Allen v. State*, 160 N. Y. Supp. 85, in which the court said (p. 87) : "The theory of the law, and of the underlying constitutional authorization, is that the accidents growing out of the operation of industrial enterprises become a legitimate part of what is known in commercial life as the 'overhead' cost, the same as the breakage, wear, and tear of machinery and equipment, and it is only in those industries which are carried on for pecuniary gain that 'the cost of operating the business' can be taken care of in the fixing of the price of the product." The court then referred to that provision of the law which provided that no employee should be within the act unless he were engaged in an employment for pecuniary gain, and held that such provision applied to government service, saying. (p. 88) : "The amendment simply placed the state and its local political divisions upon the same footing as individuals and corporations, and the fact that the state may not conduct any business for pecuniary gain has no more bearing on the proper construction of the law than the fact that many individuals and corporations do things of a hazardous character without the purpose of pecuniary gain. The state has the power to engage in business undertakings for the purpose of securing pecuniary gain; the fact that it does not do so does not tend to show that the legislature intended to increase the liability of the state beyond that of corporations and individuals, and it is not the province of the courts to enlarge upon the clearly expressed or necessarily implied scope of statutes changing the rules of the common law."

The compensation act of the state of California was under consideration by the supreme court of that state and a question of statutory construction, very similar to that in the case here, was there presented. The court held in *Miller v. Pillsbury*, 164 Cal. 199, that, since by the wording of the statute it was doubtful whether or not the state, under certain circumstances, should or should not be included within the act, the statute, therefore, would be con-

strued in favor of the state and the state employees held to be excluded. In the concurring opinion in that case it is said (p. 204): "It is apparent that this statute raises a doubt whether or not it was contemplated by its framers that the state should be subject to its provisions. Under fundamental and familiar principles of construction of statutes such as this the existence of the doubt is the solution of the inquiry. Wherever such a doubt does exist the construction favors the sovereign. The sovereign is not brought within the scope of its own laws unless the intent that this should be done is made plainly to appear. This general rule of construction favoring the sovereign in case of doubt is applied to grants by the state, to statutes of limitation, to rights of action, and, indeed, to all laws and contracts concerning which it may be thought that the state is included or is a party. If, in truth, the state desires to subject itself to the law here in question it could and should do so in language of clear and unmistakable import."

For the reasons given, it is our opinion that the act does not cover the plaintiff in this case, and the judgment of the lower court is therefore reversed and the case dismissed.

REVERSED AND DISMISSED.