THE SCHOOL DISTRICT OF MURRAY, ALSO KNOWN AS SCHOOL DISTRICT NO. 56 OF CASS COUNTY, NEBRASKA, APPELLANT, V. H. NEAL LANCASTER, COUNTY SUPERINTENDENT OF SCHOOLS OF CASS COUNTY, ET AL., APPELLEES.

277 N. W. 2d 558

Filed April 17, 1979. No. 42131.

Perry, Perry, Witthoff & Guthery, for appellant.

Ronald D. Moravec, Cass County Attorney, for appellees.

Heard before KRIVOSHA, C. J., McCOWN, and WHITE, JJ., and KORTUM and FAHRNBRUCH, District Judges.

KRIVOSHA, C. J.

Appellant herein, the School District of Murray, in the county of Cass, in the State of Nebraska, also known as School District No. 56 of Cass County, Nebraska (District 56), appeals from an order of the District Court for Cass County, Nebraska, denying District 56's prayer for an alternate writ of mandamus. For reasons more particularly set out in this opinion, we affirm the judgment of the District Court.

The decision in this case turns on the interpretation of the phrase "the territory's proportionate share of any balance remaining in the nonresident tuition fund" contained in section 79-4,104, R. R. S. 1943. Section 79-4,104, R. R. S. 1943, reads in full as follows: "If any secretary of the school board or board of education of any school district shall fail or neglect to make report of the first semester or first half year attendance separately, he may include the

same with the attendance report of the second semester or second half year, and the county treasurer shall pay for the whole attendance. In all cases where there is not sufficient money to pay the whole amount due any district or districts for the first semester or first half year, the balance due shall be included with the payment for the second semester or second half year. If there shall be any such deficiency, it shall be provided for in making the levy for the succeeding year. If a balance remains in the fund after all claims have been paid, it shall not revert to the county general fund but shall remain in the nonresident high school fund and be deducted from the amount levied for the succeeding year. When any territory not included in a school district offering secondary education becomes a part of such a district, the territory's proportionate share of any balance remaining in the nonresident tuition fund as of September 15 shall be credited to the district of which the territory has become a part."

District 56 maintains that the "territory's proportionate share" is arrived at by computing the ratio of the assessed valuation of the subject territory as it relates to the total assessed valuation of all pertinent territory times the balance in the fund as of September 15. The county, on the other hand, maintains that the "territory's proportionate share" is arrived at by determining the total amount paid into the fund by the territory and subtracting the amounts paid out of the fund on behalf of the territory. The balance, if any, constitutes the "territory's proportionate share" in the fund which the territory is entitled to receive.

Unfortunately for all concerned, the phrase "the territory's proportionate share of any balance remaining * * *" is not a classic example of legislative clarity. Therefore, its meaning cannot be determined from a simple reading of the statute. With

this in mind we now examine the facts and the statutes involved in this case.

School districts in Nebraska are divided into six classes. § 79-102, R. R. S. 1943. A Class I district is any school district that maintains only elementary grades under the direction of a single school board. Class I school districts do not offer high school education. The laws of Nebraska, however, require that 4 years of nonresident public high school education be secured to all children of the State of Nebraska whose parents or guardians reside in a public school district which maintains less than a 4-year high school course of study. § 79-494, R. R. S. 1943. This is accomplished by contract between the Class I school district and any neighboring district offering high school education. § 79-486, R. R. S. 1943.

To provide the necessary funds for this type of program, the statutes in question were enacted. The parent or guardian of a high school age child living in a school district not offering a 4-year high school education makes application for educational benefits to the county superintendent of schools of the county in which they reside before July 1 of each year. § 79-4,105, R. R. S. 1943. There is no requirement that the application indicate which school district the child will attend. Such option is left to the parent or guardian and the student. Werth v. Buffalo County Board of Equalization, 187 Neb. 119, 188 N. W. 2d 442. Each high school district that will receive nonresident high school students certifies to the superintendent the rate to be charged for education of nonresident high school age students. § 79-4,102(2), R. R. S. 1943.

The superintendent then certifies to the county board of commissioners the following information: (1) The number of qualified pupils from all Class I school districts in the county for which application for nonresident high school education has been made; and (2) a list of school districts which have

been approved by the State Board of Education as schools qualified to grant nonresident public high school education to nonresident high school age pupils. § 79-4,102(1), R. R. S. 1943.

The county assessor then certifies to the county board of commissioners the current valuation of all property subject to the applicable levy in the county. § 23-927.01, R. R. S. 1943.

The county board of commissioners, sitting as the county board of equalization, levies a sufficient tax to pay the nonresident high school tuition, as certified by the county superintendent of schools. § 79-436, R. R. S. 1943. In so doing, the county board excludes from the levy the assessed value of all taxable property of any district in which is maintained an approved 4-year high school, and one-half of the assessed value of all taxable property of any district in which there is maintained an approved 2-year high school.

The county treasurer collects the payment of the tax levied and deposits it into a fund known as the nonresident high school tuition fund. § 79-437, R. R. S. 1943.

During the school year each receiving high school district certifies to the county superintendent of schools the number of nonresident pupils enrolled and the number of days those pupils were enrolled. The superintendent certifies that information to the treasurer. Upon such order the treasurer pays to the appropriate receiving high school districts an amount sufficient to pay the nonresident high school tuition rate previously established. § 79-4,103, R. R. S. 1943.

If there is not sufficient money in the fund to pay the whole amount due any district or districts for the first semester or first half year, the balance is included with the payment for the second semester or second half year. Further, if there is any deficiency, it is made up by including the deficiency

in the levy for the succeeding year. Likewise, if a balance remains, the monies do not revert to the general fund but remain in the nonresident high school fund and are deducted from the amount necessary to be levied for the succeeding year. § 79-4,104, R. R. S. 1943.

District 56 was a Class I school district for a number of years and, as such, maintained only elementary grades. Children residing in District 56 and enrolled in grades 9 through 12 were educated as nonresident high school students in neighboring high school districts. On March 22, 1977, an election was held in District 56 with the voters at that time voting to become a Class II school district. As a Class II school district, District 56 would maintain its own high school or would provide high school education for its students by contract with another district and not under the provisions of the nonresident high school education statutes. The vote to become a Class II school district was made effective May 28, 1977, which coincided with the end of the 1976-77 school year.

In July of 1977 District 56 made application to the Commissioner of Education and State Board of Education and was reclassified as a Class III school district, effective September 1, 1977. The reason for this change is not clear from the record, but is undoubtedly due to a reexamination of the population within the district. § 79-102(2) and (3), R. R. S. 1943. By reason of these changes, high school students whose parents or guardians reside within District 56 were no longer entitled to nonresident high school tuition privileges in other school districts. District 56 itself had to provide for their education. The last payment made out of the fund for the education of children residing in District 56 as nonresident high school tuition students was on June 1, 1977. Evidence in this case discloses that for the year 1976-77 the county treasurer paid out $22,467.90 more

for the education of children residing in District 56 than the district had paid into the fund. Moreover, evidence discloses that for at least the 18 years preceding this action, beginning with 1959-60, District 56 received more money for the education of its nonresident high school students than it paid into the fund.

On September 15, 1977, the nonresident high school tuition fund had a balance of $198,985.09. It is with this background that we attempt to determine what the Legislature meant when it provided that when a territory becomes a part of a district offering secondary education it is to receive "the territory's proportionate share of any balance remaining in the nonresident tuition fund as of September 15 * * *."

We have earlier announced the basic principles to be used in statutory interpretation. Where the language used in a statute is ambiguous, recourse should be had to the legislative purposes. Wang v. Board of Education, 199 Neb. 564, 260 N. W. 2d 475. Where, because a statute is ambiguous, it is necessary to construe it, the principal objective is to determine legislative intention. Equal Opportunity Commission v. Weyerhaeuser Co., 198 Neb. 104, 251 N. W. 2d 730. Legislative intent is the cardinal rule in the construction of statutes. Brown v. Sullivan, 195 Neb. 729, 240 N. W. 2d 51. A fundamental principle of statutory construction is to ascertain the legislative intent and to give it effect. United States of America v. Edmunds, 186 Neb. 271, 182 N. W. 2d 829. The reasons for the enactment of a statute and the purposes and objects of an act may be guides in an attempt to give effect to the main intent of the lawmakers. State v. Jennings, 195 Neb. 434, 238 N. W. 2d 477. When the literal wording of a statute leads to an absurdity or to an illogical or unjust conclusion, the intention of the Legislature as gathered from the entire act will prevail. Ray v. School District of Lincoln, 105 Neb. 456, 181 N. W. 140. In con-

struing a statute the court must look to the object to be accomplished, the evils and mischiefs sought to be remedied, or the purpose to be subserved, and place on it a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it. Johnson v. School Dist. of Wakefield, 181 Neb. 372, 148 N. W. 2d 592.

While we have indicated that legislative intent and history are important in attempting to resolve these matters, an examination of the legislative history in this case does not provide us with either a wealth of material or a clear answer.

Prior to 1971, section 79-4,104, R. R. S. 1943, was silent with regard to the disposition of any balance remaining in the nonresident school tuition fund should a territory establish its own secondary educational scheme and no longer be eligible to participate in the fund. In 1971, L.B. 447 was introduced and considered by the Eighty-second Nebraska Legislature, First Session. The specific language contained in L.B. 447, as introduced, which sought to amend section 79-4,104, R. R. S. 1943, reads as follows: "When any school district ceases to exist, that district's proportionate share of any balance remaining in the nonresident tuition fund shall be credited to the district of which it becomes a part." The statement of intent prepared by the principal introducer of the amendment provided: "The intent of the bill is to provide that when a school district is merged with another district, its share of the nonresident tuition fund shall follow it, and be credited to the new district."

During a committee hearing Mr. S. H. Brauer appeared before the committee on education in support of L.B. 447 and gave testimony as follows: "S. H. Brauer: Mr. Chairman, members of the Education Committee, my name is S. H. Brauer, Jr., and I would like to appear on behalf of LB 447. I perhaps, for the benefit of some of you who have not been

aware of this problem, the nonresident tuition fund by law, should not develop into a surplus. However, in a number of the counties, quite substantial surpluses have evolved over the years and when a school district joins with a K-12 system or when freeholders transfer their property into a K-12 system * * * the money *which those people have contributed to this surplus fund by law, is locked into this fund.* And, therefore, it is not following them into the district in which they transfer. And so with the amount of reorganization that has taken place, a lot of taxpayers have consequently lost a substantial amount of money *which they contributed in taxes* which was held in this fund. And so what this bill is attempting to do is to devise a means whereby this money would follow them into the high school system which they attach this property to on a pro rata basis.'' (Emphasis supplied.)

It would appear from that discussion that the proponents of L.B. 447 were concerned about the individuals in the territory who paid money into a fund which continued to increase over time, contrary to the statutes. While the statute does not contemplate the creation of any surplus and requires that if any surplus remains at the end of any given year, it should be taken into account before levying the tax for the succeeding year, a surplus, nevertheless, did develop. It appears clear to us that the Legislature was attempting in L.B. 447 to eliminate a ''windfall.'' This ''windfall'' accrued to those territories which remained a Class I district when other portions of the territory removed themselves to become a district other than a Class I district. The surplus caused in part by their contributions amounted to a ''windfall'' for the remaining Class I districts.

If that was the basic intent of L.B. 447, we would be hard pressed to now declare that District 56 should enjoy a ''windfall'' by reason of its leaving the district and that the remaining territories should

suffer a detriment by reason thereof. Certainly, the provisions of L.B. 447 could not have been intended for that purpose. Prior to the amendment, if any territory left, it likewise left its surplus funds. The purpose of L.B. 447 was to eliminate such a result and to insure that a withdrawing district which had contributed more than it had received could take with it the surplus paid by the withdrawing district. Were we to now support District 56' position, we would not only be providing that District 56 might receive the benefit of all funds contributed by it during the school year, but it would likewise be permitted to withdraw funds contributed by others, thereby increasing the remaining districts' deficit to the benefit of District 56. There is nothing in the history of L.B. 447 to sustain that position.

If, instead of a surplus existing in the fund on September 15, there was a deficit existing at the time of withdrawal, District 56 would not be called upon to make up that deficit. Only the remaining districts would be so burdened. It appears to us that we should interpret this section consistent with the legislative intent to insure that there is an even-handed approach to the surplus. If District 56 does not suffer the burdens by reason of its withdrawal when a deficit exists, it likewise should not enjoy a windfall when a surplus exists. The record indicates District 56 has received more money for the education of its students than in fact it contributed. Yet a surplus remains. This surplus can only be occasioned by reason that other territories within the district have already contributed more to the fund than they received from the fund. To now sustain the district's position appears to us to be adding insult to injury. We do not believe that the legislative intent nor a reading of the statute compels such a result.

District 56 has also directed our attention to a number of other statutes wherein, upon dissolution,

merger, or otherwise, division is made based upon the formula suggested by District 56. The difficulty with such examples, however, is that in each of those instances the statute specifically directs the division to be made in such manner, as District 56 contends is appropriate here. §§ 79-414, 79-415, 79-417, and 79-420, R. R. S. 1943. The Legislature failed to so direct in section 79-4,104, R. R. S. 1943. It can easily be argued that the Legislature knew how to direct a division of funds based upon the formula advocated by District 56. In the absence of that direction we find that the Legislature did not intend such a result.

Several other errors are assigned by District 56. However, in view of our disposition of this issue, consideration of those errors is not necessary. The judgment is affirmed.

AFFIRMED.

FAHRNBRUCH, District Judge, concurs in result.