WEST NEBRASKA GENERAL HOSPITAL, A NEBRASKA
NONPROFIT ORGANIZATION, APPELLANT, V.
JOHN R. HANLON, COMMISSIONER,
DEPARTMENT OF LABOR,
STATE OF NEBRASKA, ET AL., APPELLEES.

302 N.W.2d 694

Filed February 27, 1981. No. 43221.

Steven C. Smith of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke for appellant.

Paul L. Douglas, Attorney General, and Jerold V. Fennell for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, and HASTINGS, JJ.

HASTINGS, J.

The appellant, West Nebraska General Hospital (WNGH), was directed by the Nebraska Department of Labor, Division of Employment, to reimburse the Unemployment Trust Fund in the sum of $1,412 for benefits paid to WNGH employees during the quarter ending March 31, 1978. An application for review and redetermination filed before the defendant John R. Hanlon, commissioner, Department of Labor, was denied. That decision was appealed to the District Court for Lancaster County under the provisions of Neb. Rev. Stat. § 48-650 (Reissue 1978), which ruled adversely to WNGH. This appeal followed, in which WNGH assigns as error the ruling that the reserve or experience account of St. Mary Hospital (WNGH's predecessor) could not be transferred to the credit of WNGH and used to offset the latter's reimbursement charges. We affirm the judgment of the District Court.

The underlying facts are not in dispute. WNGH is a nonprofit corporation which, on January 1, 1972, elected to become liable for payments to the Unemployment Compensation Fund in lieu of contributions, and has made payments on the reimbursable basis pursuant to Neb. Rev. Stat. § 48-660.01(2) (Reissue 1978). On August 19, 1977, St. Mary Hospital (St. Mary) executed a contract of sale of all its property, assets, and employees to WNGH as purchaser. The property sold specifically included "so much of Seller's unemployment compensation reserve fund which is legally transferable." The sale took place on November 30, 1977, and the commissioner was duly notified of the acquisition.

Prior to the sale, St. Mary was an employer subject to the Employment Security Law, and was making contributions to the Unemployment Compensation Fund on the regular contributory basis. These contributions, as provided by Neb. Rev. Stat. § 48-649 (Reissue 1978), required contributions at a maximum rate ranging from 2.7 percent to 3.7 percent of an employer's annual payroll, depending upon whether

that employer's experience account at the beginning of the year exhibits a positive or negative balance. It was stipulated that on the date of sale there was a positive balance of $81,766.18 in the experience account of St. Mary, and the contribution rate for the calendar year 1978 was .3 percent. WNGH is billed on a quarterly basis by the commissioner for an amount equal to the full amount of regular benefits plus one-half of the amount of extended benefits paid during the preceding quarter, as provided by § 48-660.01(2). On May 24, 1978, the commissioner notified WNGH that benefits of $1,412 had been charged to its account for the first quarter of 1978, and demanded reimbursement of that account. WNGH filed an application for review and redetermination, requesting that the amounts which were credited to the St. Mary reserve or experience account be credited to WNGH and applied to the statement for the first quarter of 1978 for payments in lieu of contributions due from WNGH and all future statements until the St. Mary reserve account reaches a balance of zero.

As authority for its request, WNGH cites Neb. Rev. Stat. § 48-654 (Reissue 1978), which states in part: "Any employer that acquires the organization, trade, or business, or substantially all the assets thereof, of another employer shall immediately notify the commissioner thereof, and shall assume the position of such employer *with respect to the resources and liabilities of such employer's experience account* as if no change with respect to such employer's experience account has occurred . . . ." (Emphasis supplied.) The commissioner takes the position that the above statute applies to an acquisition by an employer using the contributory basis and not to an employer using the reimbursable basis. Both parties agree that the issue is one of statutory construction.

The Employment Security Law requires a non-profit organization to pay contributions on a regular basis unless it elects to reimburse the commissioner

for actual benefits paid by him, as provided by § 48-660.01(1) and previously set forth herein. The regular basis applies a contribution rate applicable to each employer on the basis of his actual experience in the payment of contributions and with respect to benefits charged against his separate experience account. § 48-649. Experience rating is based on the proposition that those employers whose workers suffer the most involuntary unemployment should pay at a higher rate than those employers whose workers suffer little involuntary unemployment. The basic principle is that employers who stabilize employment are rewarded by lower contribution rates. [1976] 1B Unemploy. Ins. Rep. (CCH) ¶ 1120.

Reimbursement financing is a method which allows the organization to reimburse the Unemployment Compensation Fund for the amount actually paid out. Nonprofit organizations are automatically subject to the regular experience rating provisions unless they elect the reimbursement method of financing. By using this method they are, in essence, self-insurers and are liable for such benefit costs for their employees, but are not liable for the cost of any other benefits. *Maryland Empl. Sec. v. Holy Cross Hosp.*, 43 Md. App. 406, 405 A.2d 766 (1979). They further escape the burden of paying the administrative costs of the system. See *St. Joseph, etc. v. Employment Sec. Dept.*, 92 Wash. 2d 353, 597 P.2d 393 (1979).

The two systems are separate and distinct, and a nonprofit organization must elect to use one or the other. WNGH has attempted to overlap the two systems by applying its predecessor's experience account to its own reimbursement account. We find no authority which allows such action, and logic dictates a contrary conclusion. Section 48-654, which allows an acquiring organization to assume the position of its predecessor with respect to the latter's experience account, refers to the contribution rate of that employer. The experience account balance is used to determine the rate

at which the employer must contribute, and it is not a cash account which may be treated as a liquid asset. If WNGH had not elected to use the reimbursement financing method and was liable for regular contributions, then it would be required to assume the position of its predecessor with regard to its experience account and contribution rate. To that extent, it would have been entitled to assume the positive experience balance possessed by St. Mary. However, to overlap the two systems, as urged by WNGH, would result in the payment of benefits from the Unemployment Compensation Fund without a corresponding payment of contributions or reimbursement. We are certain that the Legislature could not have intended to give the reimbursing employers a "free ride" at the expense of the contributing employers. See *Mann Home v. Morgan*, 19 Or. App. 853, 529 P.2d 964 (1974).

In construing a statute, the court must look to the objective to be accomplished, and the purpose to be served, and to place on it a reasonable construction which will best effect its purpose, rather than a construction which will defeat it. *Evans v. Metropolitan Utilities Dist.*, 187 Neb. 261, 188 N.W.2d 851 (1971). We agree with the commissioner and the District Court in determining that the Employment Security Law does not allow a reimbursing employer to acquire the experience account of its predecessor and apply such account against its reimbursement charges. The judgment of the District Court is affirmed.

AFFIRMED.

CLINTON and WHITE, JJ., participating on briefs.