THOMAS S. MITCHELL, APPELLANT, V. COUNTY OF
DOUGLAS, NEBRASKA, APPELLEE.
329 N.W.2d 112

Filed January 21, 1983. No. 81-613.

Jerome A. Merwald, for appellant.

Donald L. Knowles, Douglas County Attorney, and Rockford G. Meyer, for appellee.

KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

KRIVOSHA, C.J.

The appellant, Thomas S. Mitchell, appeals from an order of the District Court for Douglas County, Nebraska, dismissing Mitchell's petition in error. We affirm.

Mitchell was employed as a deputy sheriff by the County of Douglas. On August 5, 1980, while running a "combat action course," he suffered a myocardial infarction which resulted in his being totally disabled and unable to perform his duties with the Douglas County sheriff's office. Mitchell filed a claim with the county, seeking to obtain coverage for his injury under a specific program established by the county and known as the "Injured on Duty Policy." The policy, adopted by resolution on November 25, 1975, by the Douglas County Board of County Commissioners, specifically provided that if certain conditions were met, members of the Douglas County sheriff's office would be eligible to re-

ceive disability payments equal to 100 percent of their total salary for the first 5 years of disability and 70 percent of their total salary thereafter.

The county board's resolution creating the program specifically provided in relevant part as follows: "WHEREAS: (a) The Douglas County Sheriff's Office is desirous of the County implementing an Injured on Duty Policy for members of the Douglas County Sheriff's Office, such injury causing total disability. (b) To be considered totally disabled the individual must be unable to perform the duties of his occupation and receive no earnings for performing other work or service. (c) The Injured on Duty Plan causing total disability for the Sheriff or one of his Deputies would pertain only to injuries received by employees of the Douglas County Sheriff's Office while performing duties for and in behalf of Douglas County. (d) The Injured on Duty Plan is established for Douglas County Sheriff's employees *only while performing a high-risk duty in the course of their employment.* If there be a discrepancy as to whether or not the injury was received during high-risk duty, a three-man panel is established to make the final determination." (Emphasis supplied.) Neither the resolution nor any supplementary material adopted by the county board defined "high-risk duty." Following Mitchell's injury a dispute developed as to whether Mitchell's injury was due to a "high-risk duty" within the terms of the resolution, and pursuant to the resolution an evidentiary hearing was conducted on March 4, 1981, before the designated panel. On March 17, 1981, the panel concluded that Mitchell's claim should be denied.

The transcript of the hearing before the panel discloses that Mitchell, who was 40 years of age at the time of his heart attack and who weighed 215 pounds, was required on the day in question to negotiate a combat action course, which consisted of running along a designated course and firing a side-arm at various targets. The course was designed to

simulate the stress which an officer might encounter in an emergency situation so that his accuracy with a firearm could be tested under somewhat realistic conditions. The stress was generated by reason of having to fire for accuracy and from peer pressure to perform well. The day that Mitchell ran the course the temperature was in the mid to upper 80s and the humidity was high. He ran the course once without exhibiting any adverse symptoms, but he failed to pass; so he was required, after a rest of 10 minutes or less, to run it a second time. This time he passed, but he began to sweat heavily and complained that he was short of breath. He later went into cardiac arrest and suffered the myocardial infarction.

The first and only issue that we need consider in reviewing this appeal is whether the action of Mitchell in running this combat target-firing course was "high-risk duty" within the meaning of the resolution. If we conclude, as we do, that it was not high-risk duty, then Mitchell was not entitled to additional compensation and the board's action, for whatever reason, was correct. As we indicated at the outset, the county board's resolution does not define "high-risk duty." We are, however, aided by certain rules of construction in attempting to ascertain the meaning of the resolution. We have previously held that this court, in considering the meaning of a statute, should, if possible, discover the legislative intent from the language of the act and give it effect. See, *Freese and Johnson v. County of Douglas,* 210 Neb. 521, 315 N.W.2d 638 (1982); *Otto v. Hahn,* 209 Neb. 114, 306 N.W.2d 587 (1981). We are furthermore advised that one of the fundamental principles of statutory construction is to attempt to ascertain the legislative intent and to give it effect. See *Seldin Development & Management Co. v. Chizek,* 208 Neb. 315, 303 N.W.2d 300 (1981). Also, in construing a statute, this court must look to the objective to be accomplished and the purpose to be

served, and place on it a reasonable construction which will best effect its purpose rather than a construction which will defeat it. *West Nebraska General Hospital v. Hanlon,* 208 Neb. 173, 302 N.W.2d 694 (1981). And, finally, in construing a statute, this court must look to the objects to be accomplished, the evils and mischiefs sought to be remedied, or the purpose to be served, and place on the statute a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it. *School District of Murray v. Lancaster,* 203 Neb. 109, 277 N.W.2d 558 (1979). We believe that the rules of construction used by this court in interpreting legislative action are applicable here and of benefit to us in attempting to determine the meaning of the resolution adopted by the Douglas County board.

In our opinion, the resolution was not intended to either eliminate or duplicate the general workmen's compensation laws of the State of Nebraska applicable to employees of the Douglas County sheriff's office. We must therefore conclude that the county board, in adopting the resolution in question, was attempting to provide some benefit for employees of the Douglas County sheriff's office which would be other or different than that which they would normally have received by reason of their employment under the workmen's compensation laws, and which was intended to provide them with an additional benefit because of doing something more than performing their normal and routine duties. We believe that is the reason the Douglas County board, in adopting the resolution, limited coverage to the sheriff's employees to "only while performing a high-risk duty in the course of their employment." Obviously, if the resolution was intended to cover work normally performed in the course of their employment, it would have been unnecessary to have included the phrase "high risk."

One may argue that just being a deputy sheriff is high risk. Yet, the resolution required that the in-

jury be the result of performing a "high-risk duty" in the course of their employment. The use of the phrase "high-risk duty in the course of their employment" must mean something more than routine employment duties. The question to be answered, then, is whether running the combat course was a high-risk duty. We find no cases in Nebraska which have defined the phrase "high risk." Nevertheless, in looking at the standard dictionary definition, we find that the term "risk" is defined to mean "to expose to hazard or danger." Webster's Third New International Dictionary, Unabridged (1968). We are therefore required to conclude that, in the first instance, the duty being performed which would entitle Mitchell to payment must be something in the course of employment which exposes the officer to a hazard or danger. The term "high" is likewise defined to mean "at or to a great distance or altitude; far up toward the source; in or to a high position, amount, or degree." *Id.* Reading the words together, then, we would interpret the phrase "high risk" under the resolution to mean exposing one to a greater hazard or danger than one would normally encounter in the course of his employment. We believe an example of such high-risk duty for a police officer might be the pursuit of a fleeing felon or attempting to charge a building where a felon has secured himself and is firing at the officers. These, of course, are intended simply as examples of high risk and not intended in any manner to define the term in its entirety. We believe that running an obstacle course, though indeed it may be stressful, cannot be said to be high risk within the meaning of the county's resolution. There is no great hazard or danger that anyone will return the officer's fire, nor can the officer likely be injured except perhaps by his own careless act or, as here, due to a gradual physical infirmity. We cannot believe that in attempting to provide this extraordinary benefit for the members of the sheriff's department the county board could

have intended the action of an officer in performing on a firing range to be considered a high-risk duty, no matter how stressful the experience might be. We therefore believe that the board appointed in the county board's resolution to determine whether the injury was committed while engaged in a high-risk duty was correct in determining that Mitchell was not injured as a result of a high-risk duty, and the District Court was likewise correct in affirming its action. The judgment of the trial court is therefore affirmed.

AFFIRMED.

CLINTON, J., not participating.