GENE P. SPENCE, RICHARD P. JEFFRIES, AND MARY ALICE RACE, APPELLANTS, V. LEE TERRY, ELECTION COMMISSIONER OF DOUGLAS COUNTY, NEBRASKA, APPELLEE.

340 N.W.2d 884

Filed December 2, 1983. No. 83-708.

Soren S. Jensen and Thomas J. Culhane of Erickson, Sederstrom, Leigh, Eisenstatt, Johnson, Kinnamon, Koukol & Fortune, P.C., for appellants.

Donald L. Knowles, Douglas County Attorney, H. L. Wendt and Rockford G. Meyer, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

SHANAHAN, J.

Gene P. Spence, Richard P. Jeffries, and Mary Alice Race, directors of the Omaha Public Power District, sought an injunction to prohibit Lee Terry, election commissioner of Douglas County, Nebraska, from certifying and submitting to the county board a recall petition under the provisions of Neb. Rev. Stat. §§ 23-2010 to 23-2010.10 (Cum. Supp. 1982). The District Court for Douglas County denied the injunction and dismissed the directors' petition. Upon appeal by the directors we reverse and remand this matter to the District Court.

In the spring of 1983 some citizens, concerned about the actions of the appellants-directors in approving salary increases to be paid by the district, formed Ratepayers Coalition, a nonprofit corporation, which sponsored a movement to recall Spence, Jeffries, and Race from their respective offices as directors of the Omaha Public Power District.

Under the auspices of Ratepayers Coalition, an affidavit pursuant to § 23-2010.01 was filed on July 11, 1983, in the office of the Douglas County election commissioner. In response to such affidavit a "re-

call petition" was issued by Terry's office. The original recall petition consisted of 9,840 sheets issued by the election commissioner's office.

On August 9, 6,450 sheets, that is, the original recall petition, were returned to Terry's office and were timely filed within 30 days after the affidavit of July 11. See § 23-2010.03.

In view of the total number of votes cast in the district for the last gubernatorial election preceding the filed petition for recall, the number equivalent to "twenty-five per cent of the total number of votes" cast in such gubernatorial election was 27,696. See § 23-2010(2).

On August 9, when the original recall petition for each director was delivered to the election commissioner, Terry determined that no petition regarding any director had 27,696 signatures. Between August 9 and August 16, Terry's office proceeded to "validate" the signatures regarding each petition. This validation process included vertification that each signatory was in fact a registered voter at the date when the petition was signed, an inspection to avoid duplication of signatures, a random selection for a comparison of signatures, that is, a comparison between the signature on the petition and the signature on the voter registration card, and an inspection regarding other formalities prescribed regarding a recall petition.

As a result of such validation process, Terry concluded that an insufficient number of registered voters had signed the petition. After the validation process there were 22,733 signatories regarding the Spence petition; 22,842 regarding the Jeffries petition; and 22,830 signatories regarding the Race petition. On August 16 Terry informed Ratepayers Coalition that an insufficient number of registered voters had signed the petition for recall. An "amended recall petition" was issued by Terry on August 16.

On August 19 the directors requested a restraining

order and permanent injunction which would prohibit Terry from certifying the amended recall petition and submitting any recall petition to the county board of Douglas County.

On August 26 the amended or supplementary petition for recall which had been obtained on August 16 was returned and filed in Terry's office. With the additional signatures on the amended or supplementary petition, the signatures on the recall petition regarding each of the directors exceeded 31,000.

The District Court on August 29 entered a restraining order, but, after a hearing, the restraining order was dissolved on September 14 and the directors' petition was dismissed on September 15.

The directors contend that the statutes governing a recall petition require that the number of signatories on the original recall petition be equal to at least 25 percent of the number of votes cast in the district for the most recent gubernatorial election, that is, 27,696 signatories in this case, so that an insufficiency of that number of signatories precludes any further action on a recall petition. Terry suggests that the provisions for amendment under § 25-2010.04 allow a petition signed by less than 27,696 to be supplemented within 10 days by additional signatories of such supplementary petition.

In order to discuss the problem we must first place the statutes in question in their respective historical and legislative perspectives.

Before amendment, Neb. Rev. Stat. § 23-2010 (Reissue 1977) in reference to a recall petition contained the following: ''A petition signed by the electors . . . equal in number to at least twenty-five per cent of the total number of votes cast . . . for the office of Governor . . . shall be filed with the county clerk. . . . Within fifteen days from the date of the filing of such petition, the county clerk shall compare the petition signatures with the voters' registration to ascertain whether such signatures are valid. . . . If the clerk's certificate to such petition shows that it is

insufficient because of lack of signatures, it may be supplemented within fifteen days from the date of filing the original petition by the filing of a supplemental petition stating all the facts as in the case of the original petition. The county clerk shall within ten days from the filing of such supplemental petition make a like examination of such supplemental petition signatures, and if the certificate shall show that the petition, together with any supplement thereto which may be filed, contains the requisite number of signatures, the clerk shall submit the petition . . . to the county board."

In 1980, § 23-2010 was amended to include § 23-2010.04, as follows: "Within ten days after the filing of ' the petition, the county clerk or election commissioner shall ascertain whether or not the petition is signed by the requisite number of registered voters, and shall attach thereto his or her certificates showing the result of such examination. If the petition be insufficient, he or she shall forthwith notify the person filing the petition that the petition may be amended at any time within ten days after the giving of such notice by the filing of a supplementary petition upon additional petition papers issued, signed, and filed as provided for the original petition. . . ."

Must the original recall petition have signatories in number equal to 25 percent of the total number of votes cast in the district for the last gubernatorial election? The provisions of § 23-2010.04 are susceptible of multiple interpretations and possible meanings as a result of the somewhat less than lucid language regarding an original petition's insufficiency which permits a supplementary petition. In short, there is ambiguity concerning the statutes governing a recall petition. One of the fundamental principles of statutory construction is to attempt to ascertain the legislative intent and to give effect to that intent. *Mitchell v. County of Douglas*, 213 Neb. 355, 329 N.W.2d 112 (1983). To ascertain the intent of the

Legislature, a court may examine the legislative history of the act in question. See, *Wang v. Board of Education*, 199 Neb. 564, 260 N.W.2d 475 (1977); *North Star Lodge #227 v. City of Lincoln*, 212 Neb. 236, 322 N.W.2d 419 (1982). Legislative history includes the record of a floor explanation or debate, which is an extrinsic, secondary source in statutory interpretation. See *State ex rel. Bouc v. School Dist. of City of Lincoln*, 211 Neb. 731, 320 N.W.2d 472 (1982).

Although counsel for the parties have indicated that the legislative history of the statutes in question would not be helpful, we find that legislative history both informative and enlightening in our quest for the legislative intent behind the 1980 amendments of statutes governing a recall petition. The amendments by the Eighty-sixth Legislature are found in 1980 Neb. Laws, L.B. 601, introduced by Senator Martin F. Kahle. After the hearing on L.B. 601 the committee issued the following committee statement on February 6, 1980, which included the statement of "intent," namely, "The bill would also eliminate the fifteen day supplemental period if the county clerk finds that the petition does not contain the required amount of signatures . . . ." Later, on February 26, 1980, there was debate on the floor of the Legislature concerning L.B. 601 and the proposed statutory amendments regarding a recall petition. In that debate Senator Kahle further explained the amendments at 7457: "If, after 30 days the petition circulators come in and the county clerk finds that there are not sufficient signatures, the petition is lost."

The contents of the legislative history make abundantly clear that the Legislature intended a minimum number of signatures to be required on the original recall petition before any verification of signatures is required or a supplementary petition is permissible. The original recall petition, according to the legislative intent, must purport to have been

signed by signatories in a number determined by the formula set forth in § 23-2010. We will not speculate on the motivation behind the amendments which imposed more stringent requirements for recall of an elected official. Such speculation is not a function of this court. Reasons underlying valid legislation are left first to the Legislature and ultimately to the electorate. For example, when construction of the Tellico Dam threatened the snail darter with extinction, the U.S. Supreme Court concluded that the Endangered Species Act of 1973, 16 U.S.C. §§ 1531 et seq. (1976), could bar completion of the dam, and stated: "Our individual appraisal of the wisdom or unwisdom of a particular course consciously selected by the Congress is to be put aside in the process of interpreting a statute. Once the meaning of an enactment is discerned and its constitutionality determined, the judicial process comes to an end." *TVA v. Hill*, 437 U.S. 153, 194, 98 S. Ct. 2279, 57 L. Ed. 2d 117 (1978).

The people of Nebraska, acting through their elected representatives, have determined and dictated that recall of an elected official is a part of this state's democratic process. Lawful formulation of a system to achieve that objective derivatively belongs in the Legislature expressing the will of the people. As expressed by Justice Felix Frankfurter, "Courts ought not to enter this political thicket." *Colegrove v. Green*, 328 U.S. 549, 556, 66 S. Ct. 1198, 90 L. Ed. 1432 (1946).

Therefore, the judgment of the District Court is reversed and these proceedings are remanded to the District Court with directions to enter a permanent injunction restraining the. election commissioner of Douglas County, Nebraska, from certifying and submitting to the county board of Douglas County, Nebraska, the petitions for recall of the appellants-directors Spence, Jeffries, and Race.

REVERSED AND REMANDED WITH DIRECTIONS.

CAPORALE, J., not participating.