RONALD E. SORENSEN, COMMISSIONER OF LABOR, STATE OF NEBRASKA, APPELLANT, V. LARRY A. MEYER AND COMMERCIAL FEDERAL SAVINGS AND LOAN ASSOCIATION, APPELLEES.

370 N.W.2d 173

Filed July 12, 1985. No. 84-779.

Paul D. Kratz, for appellant.

Robert E. Roeder, for appellee Meyer.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

The Nebraska Appeal Tribunal ruled that the lump sum severance allowance received by the claimant, Larry A. Meyer, is to be prorated to the calendar quarters immediately following the date of payment in order to determine whether Meyer met the monetary eligibility requirements and thus qualified for weekly benefits under the Nebraska Employment Security

Law. The Commissioner of Labor, Ronald E. Sorensen, appealed to the district court, which affirmed the ruling of the appeal tribunal. In this appeal the commissioner urges that the district court misapprehended the law. We agree with the commissioner and therefore reverse and remand with the direction that the district court reverse the decision of the Nebraska Appeal Tribunal.

A brief overview of the Employment Security Law, Neb. Rev. Stat. §§ 48-601 et seq. (Reissue 1984), is a prerequisite to an understanding of the issue presented by this case.

The Employment Security Law provides cash benefits to workers who have been employed in covered employment but who become unemployed and are not otherwise disqualified. In order to become eligible for such benefits, a claimant must satisfy three basic requirements.

He or she must first satisfy the continuing or weekly eligibility requirements, such as being able to work and being available for employment. §§ 48-627 and 48-628. These continuing eligibility requirements are not at issue in this case.

The second set of requirements are found in § 48-627 and are commonly known as the monetary eligibility requirements. The pertinent portion of that statute reads:

> An unemployed individual shall be eligible to receive benefits with respect to any week, only if the Commissioner of Labor finds:
>
> . . . .
>
> (e) For any benefit year, he or she has, within his or her base period, been paid a total sum of wages for employment by employers equal to not less than six hundred dollars, of which sum at least two hundred dollars shall have been paid in each of two quarters in his or her base period.

The third set of requirements are commonly referred to as the nonmonetary eligibility requirements. They are found in § 48-628 and include disqualifications for periods during which a worker receives remuneration while unemployed, voluntarily leaves employment without good cause, is discharged for misconduct, or refuses suitable employment, among others. The pertinent part of that statutory section provides:

An individual shall be disqualified for benefits:

. . . .

(e) For any week with respect to which he or she is receiving or has received remuneration in the form of (1) wages in lieu of notice, or a dismissal or separation allowance . . . . Such payments made in lump sums shall be prorated in an amount which is reasonably attributable to such week. If the prorated remuneration is less than the benefits which would otherwise be due, he or she shall be entitled to receive for such week, if otherwise eligible, benefits reduced by the amount of such remuneration.

Section 48-602(3) defines a benefit year as beginning with the week in which the claimant files for unemployment benefits. Section 48-626 limits the weekly benefits payable during any benefit year to a maximum of 26. The last four completed calendar quarters immediately preceding the first day of an individual's benefit year constitute the base period. § 48-602(1). A claimant's eligibility for weekly benefits and the amount of those benefits are determined by the amount of wages paid to the claimant in the highest quarter of the base period. §§ 48-624 through 48-627. No question is presented but that Meyer's lump sum severance allowance constitutes "wages" as that term is defined in § 48-602(15).

With that statutory overview we are ready to turn to the facts of this case.

Meyer was terminated from his employment with Commercial Federal Savings and Loan Association on February 28, 1982. At the time of his termination he was paid $2,929.83 for accrued vacation pay. In addition, at his request that he be paid a lump sum, he was paid, at the same time, a severance allowance of $52,440.

On June 13, 1982, Meyer filed for unemployment benefits. On July 2, 1982, the commissioner determined that Meyer was ineligible for benefits because he did not meet the nonmonetary eligibility requirements of § 48-628(e). The commissioner's rationale for his determination was that the language of § 48-628(e) mandates proration of the allowance into an amount which is comparable to a weekly salary for the purpose of ascertaining whether the nonmonetary eligibility

requirements have been met. Because of the amount of the allowance, Meyer received prorated remuneration over a 1-year period and was therefore treated as employed during that period. The commissioner's determination that Meyer did not meet the nonmonetary eligibility requirements in June of 1982 was not appealed and is not at issue in this proceeding.

Thereafter, Meyer was employed for only 2 months, April and May of 1983. On July 11, 1983, Meyer again sought unemployment benefits effective July 10, 1983. In connection with this claim the commissioner, on July 20, 1983, issued a determination that Meyer had a benefit year beginning July 10, 1983, and ending July 7, 1984, and that Meyer's base period consisted of the third and fourth quarters of 1982 and the first and second quarters of 1983.

The commissioner then ruled that Meyer did not meet the initial monetary eligibility requirements set forth in § 48-627(e). As noted earlier, that statute provides that in order to qualify for weekly benefits, a claimant must have been paid $200 in each of two quarters of the base period and a total of $600 during the entire base period. The commissioner reasoned that since Meyer had elected to receive his severance allowance in a lump sum, he received no wages during the third and fourth quarters of 1982, nor during the first quarter of 1983. In other words, for the purpose of determining whether the monetary eligibility requirements had been met, the commissioner, unlike when determining whether Meyer met the nonmonetary eligibility requirements, refused to prorate the allowance but, rather, treated the allowance as wages paid to Meyer during the calendar quarter in which Meyer actually received the allowance; that is, wages all paid in the first quarter of 1982.

Meyer contends that based on the commissioner's treatment of the allowance in determining whether the nonmonetary requirements of § 48-628 had been met, he should have been considered employed during the previous two quarters for the purpose of determining whether he had met the monetary requirements under § 48-627. More specifically, he argues that to hold that the severance allowance may not be prorated in determining whether he meets the monetary eligibility requirements, but must be prorated in determining whether he

meets the nonmonetary eligibility requirements, would create an absurd, unjust, unreasonable, and unconscionable result. He advocates a broad reading of the law, with primary consideration going to the basic principle that the Employment Security Law is to be liberally construed in order that its beneficent purpose of paying benefits to involuntarily unemployed workers may be accomplished. *McClemens v. United Parcel Serv.*, 218 Neb. 689, 358 N.W.2d 748 (1984). In support of his contention Meyer points out that the statutorily prescribed unemployment insurance taxes were assessed against the severance allowance in accordance with the method by which unemployment benefits are financed under the law. §§ 48-648 and 48-649. Meyer argues it would be inequitable to exact unemployment insurance taxes on his severance allowance and then not pay the corresponding benefits.

The commissioner, on the other hand, argues that whether each of the two types of eligibility requirements has been met is determined by two separate statutes, each using different language so as to impose different standards to meet different underlying policy considerations.

The problem presented is obviously one of statutory construction. In performing that task we are bound by a number of well-established rules.

In construing a statute the language used by the Legislature should be considered to determine its intent. *Mitchell v. County of Douglas*, 213 Neb. 355, 329 N.W.2d 112 (1983); *School Dist. No. 20 v. Commissioner of Labor*, 208 Neb. 663, 305 N.W.2d 367 (1981). This court will, if possible, try to avoid a construction which leads to absurd, unjust, or unconscionable results. *Worley v. City of Omaha*, 217 Neb. 77, 348 N.W.2d 123 (1984); *In re Boundaries of McCook P.P. Dist.*, 217 Neb. 11, 347 N.W.2d 554 (1984).

Statutory language should be given its plain and ordinary meaning, *In re Interest of K.S.*, 216 Neb. 926, 346 N.W.2d 417 (1984), and where the words of a statute are plain, direct, and unambiguous, no interpretation is necessary to ascertain their meaning. *Governors of Ak-Sar-Ben v. Department of Rev.*, 217 Neb. 518, 349 N.W.2d 385 (1984); *Garreans v. City of Omaha*, 216 Neb. 487, 345 N.W.2d 309 (1984). Further, it is not

within the province of a court to read a meaning into a statute that is not warranted by the legislative language; neither is it within the province of a court to read anything plain, direct, and unambiguous out of a statute. *State ex rel. Douglas v. Herrington*, 206 Neb. 516, 294 N.W.2d 330 (1980).

We will, if possible, give effect to every word, clause, and sentence of a statute, since the Legislature is presumed to have intended every provision of a statute to have a meaning. *Iske v. Papio Nat. Resources Dist.*, 218 Neb. 39, 352 N.W.2d 172 (1984).

We also note that in determining the legislative intent, it is necessary to examine the Employment Security Law as a whole, in light of its objects and purposes. *State v. Bargen*, 219 Neb. 416, 363 N.W.2d 393 (1985); *Beatrice Manor v. Department of Health*, 219 Neb. 141, 362 N.W.2d 45 (1985); *Adkisson v. City of Columbus*, 214 Neb. 129, 333 N.W.2d 661 (1983); *PPG Industries Canada Ltd. v. Kreuscher*, 204 Neb. 220, 281 N.W.2d 762 (1979).

To recapitulate, § 48-627(e) sets forth the monetary eligibility requirement that an individual have been "paid a total sum of wages for employment by employers equal to not less than six hundred dollars, of which sum at least two hundred dollars shall have been paid in each of two quarters in his or her base period." The question therefore is whether the word "paid" in the phrases "paid a total sum" and "shall have been paid in each of two quarters" means "actually paid in those periods" or means something else, such as "actually or attributively paid by proration."

The definitions of "paid" in Webster's Third New International Dictionary, Unabridged 1620 (1968), include "receiving pay . . . marked by the reception of pay esp. in an advance lump sum . . . that has been or will be paid for." We note that several courts have held that the term "paid" in unemployment law does not mean wages payable but wages which have actually been paid. *Dessauer v. Ariz. Dept. of Economic Sec.*, 687 P.2d 392 (Ariz. App. 1984); *State, Dept. of Ind. Relations v. Willard*, 379 So. 2d 622 (Ala. App. 1980); *Giammattei v. Egan*, 135 Conn. 666, 68 A.2d 129 (1949). It may be argued, however, that since these cases all dealt with money

earned in one statutory period of employment but not paid until a later period, the reverse of the situation in this case, they have no applicability to the issue before us. What is clear from the dictionary definition and the above-cited cases is that there is no "plain and ordinary" meaning of "paid" as used in § 48-627. We must therefore, in resolving the issue, look to other rules of construction.

The commissioner contends that the policy behind the requirement that a lump sum severance allowance be prorated for the purpose of determining whether the nonmonetary eligibility requirement has been met, § 48-628(e), prevents a claimant from receiving double payments for the same period of time in the form of unemployment benefits and severance compensation. While we have not previously so held, but do so now, other courts have determined that statutes with provisions similar to ours were intended to avoid such double payments. In *West Jordan v. Department of Employment Sec.*, 656 P.2d 411, 414 (Utah 1982), the court stated:

> What this Court said in the context of workmen's compensation benefits is also true of unemployment compensation benefits for employees who have received employer severance payments: "[T]here is no statutory purpose to be served in allowing what is essentially a double recovery for the same injury."

The court went on to hold that an employee was not entitled to receive unemployment benefits for any portion of time which was equivalent to the severance allowance which was included in her final check.

In *Kalen v. Director of the Division of Employment Security*, 334 Mass. 503, 506, 136 N.E.2d 257, 258 (1956), the court, in holding that an employee's severance and vacation allowance was properly credited against unemployment benefits, said:

> The Legislature seems to have reasoned that, inasmuch as unemployment benefits were intended to aid persons who had lost their jobs and could not find work, such benefits ought not to be paid to persons who had received sums of money from their jobs because of severance until after such sums had been applied to fill the gap. The same

reasoning applies to the "vacation allowance" of $249 (also mentioned in the statute) and to the two weeks' pay in lieu of dismissal notice.

The monetary eligibility requirement in § 48-627(e), that a claimant earn a certain amount of wages during any benefit year and during each of two quarters thereof, serves a different policy. It insures that a claimant demonstrates that he or she is willing and trying to work and prevents claimants from electing to simply collect unemployment benefits rather than work.

Considering the Employment Security Law as a whole and giving effect to every word, and lack thereof, in the statutes, we conclude that the commissioner is correct in his interpretation of the law. The silence of § 48-627(e) regarding proration, compared to the mandate of § 48-628(e) that a lump sum severance allowance be prorated, persuades us that the Legislature intended there be no proration for the purpose of determining whether the monetary eligibility requirements have been met, whereas proration is required for the purpose of determining whether the nonmonetary eligibility requirements have been met. Contrary to Meyer's view, the result is neither absurd, unjust, unreasonable, nor unconscionable; the result serves the different policies of the two sections of the Employment Security Law and serves the overall policy of paying benefits to those who are trying to work but cannot through no fault of their own.

Meyer's argument that the payment of unemployment insurance taxes on the lump sum paid him as a severance allowance compels a different result is equally without merit. The tax was collected because the allowance was paid, not because it was or was not to be prorated.

We reverse the judgment of the district court and remand with the direction that the district court reverse the decision of the Nebraska Appeal Tribunal.

REVERSED AND REMANDED WITH DIRECTION.

WHITE, J., participating on briefs.

WHITE, J., dissenting.

It is the position of the Commissioner of Labor that he would like to have it both ways, i.e., to treat the payments as earnings for the purpose of disqualifying the claimant for benefits

immediately after leaving employment and as nonearnings to disqualify him from future benefits. The majority, holding that indeed "consistency is the hobgoblin of small minds," agrees with the commissioner. I do not. Catch-22 has arisen, and the result can only be described as ludicrous.

BOSLAUGH and SHANAHAN, JJ., join in this dissent.