TIMOTHY W. ANDERSON, APPELLANT, V. WILLARD PETERSON ET AL., APPELLEES.

375 N.W.2d 901

Filed November 1, 1985.   No. 84-243.

Donald H. Bowman of Peterson, Bowman & Johanns, for appellant.

Larry E. Butler of Butler & Voigt, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Timothy W. Anderson, a resident-taxpayer of Phelps County, brought suit against Willard Peterson, Alfred Holthus, Earl Thorell, Marvin Dannehl, Clarence L. Larsen, Erwin Braner, and Melvin Sall as members of the county board of Phelps County. Anderson alleged that the board members, without competitive bidding required by Neb. Rev. Stat. § 23-324.05 (Reissue 1983), entered a contract on behalf of the

county to replace the existing heating and air-conditioning system of the Phelps County Courthouse for $200,213. The district court for Phelps County, on the board members' motion for summary judgment, held that the questioned contract was exempt from competitive bidding and dismissed Anderson's petition. We affirm.

For some time before 1982, as the Phelps County Courthouse's heating and air-conditioning system was deteriorating, the county board contemplated replacement of the old system. Various departments or agencies of Phelps County had office space within the courthouse. During 1981, the county board received an estimate from a Kearney engineering firm that the replacement cost for the courthouse's heating and air-conditioning system would be more than $300,000.

In 1982, as reflected in a local newspaper's account, the county board decided to review replacement of the waning system. Phelps County at the time had a population of 9,800. A committee of board members made general inquiry of businesses believed to be in a position to handle the replacement project. The county board did not solicit sealed bids for a replacement system by notice published in a newspaper, legal or otherwise. A local heating and air-conditioning business submitted a sealed bid for the replacement project. Another bid was submitted by Kansas-Nebraska Corporation at $200,213, which was more than $47,000 lower than the only other bid submitted for the project. K-N had recently installed a heating and air-conditioning system in a neighboring county's courthouse. The Phelps County board signed a written contract with K-N for installation and replacement of the courthouse heating and air-conditioning system and paid K-N according to that contract. The replacement system installed by K-N was generally available from various businesses dealing in heating and air-conditioning systems. As a result of inheritance tax collected, the county had sufficient funds to pay the K-N contract. See Neb. Rev. Stat. § 77-2032 (Cum. Supp. 1984).

Anderson filed suit and claimed that competitive bidding on the heating and air-conditioning system was required by § 23-324.05, which in pertinent part provides:

All purchases of and contracts for supplies, materials, equipment and contractual services, and all sales of such personal property which have become obsolete and unusable shall be based, wherever feasible, on competitive bids. If the amount of expenditure or sale is estimated to exceed five thousand dollars, sealed bids shall, unless otherwise provided in this act, be solicited by public notice inserted at least one time in a legal newspaper of general circulation in the county at least five calendar days before final date of submitting bids. The county purchasing agent shall also solicit sealed bids by sending requests by mail to prospective suppliers and by posting notice on a public bulletin board in his office. Competitive bidding shall not be required in purchasing unique or noncompetitive articles or in contracting for professional services. . . .

Anderson, for benefit of the county, sought damages from the board members under the provisions of two statutes, namely, Neb. Rev. Stat. § 23-336 (Reissue 1983): "All contracts . . . in contravention of any statutory limitation . . . are hereby declared unlawful and shall be wholly void as an obligation against any such county," and Neb. Rev. Stat. § 23-337 (Reissue 1983): "Any public official . . . who shall audit, allow or pay out, or cause to be paid out, any funds of any county for any article, public improvement, material, service or labor, contrary to the provisions of section 23-336, shall be liable for the full amount so expended . . . ."

Upon motions for summary judgment filed by Anderson and the board members, the district court found that there was no genuine issue of any material fact and that the board members were entitled to judgment as a matter of law because § 23-324.05 did not apply to the county's contract for repair and improvement of the courthouse by replacement of the heating and air-conditioning system.

It is undisputed that the estimated cost of the replacement system exceeded $5,000, that such replacement system was not unique, and that the county did not solicit bids by notice in a legal newspaper. Phelps County is not required to employ a purchasing agent. See Neb. Rev. Stat. § 23-324.01 (Reissue

1983) (necessity of a purchasing agent in a county having a population more than 150,000). The question is whether the board members are entitled to judgment as a matter of law. See Neb. Rev. Stat. § 25-1332 (Reissue 1979) (rendition of summary judgment). See, also, *Sommerfeld v. City of Seward, ante* p. 76, 375 N.W.2d 129 (1985).

At the outset we acknowledge that competitive bidding, after public advertising, is a fundamental, time-honored procedure that assures the prudent expenditure of public money. H. Cohen, Public Construction Contracts and the Law 1.1 (1961). Competitive bid statutes exist to invite competition, to guard against favoritism, improvidence, extravagance, fraud, and corruption, and to secure the best work or supplies at the lowest possible price. Such statutes are enacted for the benefit of taxpayers. See *Savage v. State*, 75 Wash. 2d 618, 453 P.2d 613 (1969). Generally, competitive bidding statutes are strictly construed against public authorities required to obtain a public letting. See *Cosentino v. City of Omaha*, 186 Neb. 407, 183 N.W.2d 475 (1971). However, statutes requiring competitive bidding, although strictly construed, should not be extended beyond their clear implication. See 20 C.J.S. *Counties* § 183 (1940). See, also, *Ariz. Sec. Center v. State*, 142 Ariz. 242, 689 P.2d 185 (1984).

Therefore, raised by the present appeal is the question: Is a contract for replacement of a courthouse's heating and air-conditioning system a contract for "supplies, materials, equipment and contractual services" within § 23-324.05? Our answer lies within definitions for several terms of the statute in question.

Neb. Rev. Stat. § 23-324.03 (Reissue 1983) in part provides some definition:

> The terms supplies, materials, and equipment, as used throughout this act shall be construed to mean any and all articles or things which shall be used by or furnished to any county officer, office, department, institution, board or other agency of the county government, except election supplies, materials and equipment. The term contractual services shall be construed to mean any and all telephone, telegraph, postal, electric light and power service and

other similar services . . . .

As a result of § 23-324.03, the replacement system for the Phelps County Courthouse cannot be characterized as "contractual services" requiring competitive bids. Our focus necessarily shifts to the words "supplies, materials, [and] equipment" used in § 23-324.05. Unfortunately, the attempted definition found in § 23-324.03 is inadequate to answer our inquiry: What is the legislative intent of § 23-324.05, as well as the meaning of the words "*supplies, materials,* [and] *equipment*" found in that statute?

To determine legislative intent we generally consider the subject matter of the whole act, as well as the particular topic of a statute containing the questioned language. See *State v. Jennings*, 195 Neb. 434, 238 N.W.2d 477 (1976). In judicial construction of a statute, the statutory language will be given its ordinary and popular meaning, and a statute is open to construction only if the statute is ambiguous. See *Video Consultants v. Douglas*, 219 Neb. 868, 367 N.W.2d 697 (1985).

There are acceptable, ordinary, and popular meanings for the words under examination in § 23-324.05, namely, *supplies*—"An amount available or sufficient for a given use; store; stock. . . . Materials or provisions stored and dispensed when needed." The American Heritage Dictionary of the English Language 1293 (1981); *materials*—"tools, implements, articles, etc. needed to make or do something; as, writing *materials*." Webster's New Universal Unabridged Dictionary 1110 (2d ed. 1983); and *equipment*—"something with which a person, organization, or thing is equipped; furnishings." The American Heritage Dictionary of the English Language 443 (1981). Therefore, the language of § 23-324.05, requiring competitive bidding in a county's acquisition of "supplies, materials, [and] equipment," contemplates expenditures for tangible personal property to be used by or furnished to any county officer, office, department, institution, board, or other agency of county government, except election supplies, materials, and equipment. See *Datatrol Inc. v. State Purchasing Agent*, 379 Mass. 679, 400 N.E.2d 1218 (1980). An expenditure for replacement of a courthouse's heating and air-conditioning system is in the nature of a capital expenditure

for long-term or permanent betterment of a county's building and constitutes capital improvement of a county's real property. Such reference to capital improvement contradistinguishes a capital expenditure from an expenditure for supplies, materials, and equipment.

In our review of Nebraska statutes pertaining to competitive bids required to be solicited by a county, we find a legislative panorama presenting conspicuous inconsistencies. Several statutes regarding expenditures of public funds contemplate contracts for construction, repair, or maintenance of a county's property without competitive bids and public letting; for example, county hospital improvements which cost less than 50 percent of the hospital's original cost in certain counties (Neb. Rev. Stat. § 23-343.03 (Reissue 1983)); purchase, construction, maintenance, or improvements to a county garbage disposal plant (Neb. Rev. Stat. § 23-379 (Reissue 1983)); and construction or maintenance of a horse racing facility, including grandstands, pavilions, exhibition halls, and barns (Neb. Rev. Stat. § 23-389 (Reissue 1983)). Also, without competitive bidding or public letting, a county with a population more than 30,000 may construct or repair extramunicipal sidewalks (see Neb. Rev. Stat. § 23-365 (Reissue 1983)), although the county board "*may* receive bids for constructing or repairing any or all such walks and may let contracts to the lowest responsible bidder for constructing or repairing the same." (Emphasis supplied.) Neb. Rev. Stat. § 23-366 (Reissue 1983). Additionally, in the area of public service, Neb. Rev. Stat. § 23-378 (Reissue 1983) authorizes a contract for ambulance service without the necessity of competitive bidding or public letting. On the other hand, the county board must solicit competitive bids for the following: construction of levees and dikes (Neb. Rev. Stat. § 23-315 (Reissue 1983)); construction of streets outside the corporate limits of municipalities with specified populations (Neb. Rev. Stat. § 23-342 (Reissue 1983)); repairs in the event of a courthouse's partial destruction "by fire, riot, mob, storm, or other casualty," Neb. Rev. Stat. § 23-344 (Reissue 1983)); and county officers' supplies which cost more than $200 annually unless contracted with a sheltered workshop (Neb. Rev. Stat. § 23-321 (Cum. Supp. 1984)). If

there is a clear-cut legislative intent compelling competitive bids and pervading statutes pertaining to a county's expenditure of public funds, including an expenditure for capital improvement of a courthouse, such legislative intent eludes us. Instead of a statutory scheme containing a blanket requirement for competitive bidding but allowing specific exceptions if required, Nebraska statutes covering county expenditures and competitive bidding comprise a crazy quilt of legislation. It is indeed incongruous that a county must obtain competitive bids for "books, blanks, and stationery" (§ 23-321) but is relieved from obtaining competitive bids for a courthouse capital improvement which costs more than $200,000. Speculation about motivation or a reason behind such legislative inconsistency is not a function of this court. "Reasons underlying valid legislation are left first to the Legislature and ultimately to the electorate." *Spence v. Terry*, 215 Neb. 810, 816, 340 N.W.2d 884, 887 (1983).

In order to bring the county's contract within the purview of § 23-324.05 and the requirement of competitive bids pursuant to that statute, we would have to disregard the ordinary and popular meaning of the words *supplies*, *materials*, and *equipment* or, contrary to our constitutional role in relation to legislation, insert the phrase "capital improvements" as one of the situations requiring competitive bids for compliance with the statute being construed. We decline to rewrite the statute. Competitive bids and public letting are unquestionably a matter of legislative prerogative. The Legislature is the appropriate forum for resolution of questions concerning Nebraska's policy on the legislative relationship between competitive bidding and expenditures of public funds. In *Else v. Else*, 219 Neb. 878, 367 N.W.2d 701 (1985), we characterized a court's function in construing legislation and enunciated:

> With respect to questions about a statute, our role is limited to interpretation and application of statutes, irrespective of our personal agreement or disagreement with a particular legislative enactment, so long as a questioned statute does not violate a constitutional requirement. Whether a court considers particular legislation as wise or unwise is irrelevant to the judicial

task of construing or applying a statute.

*Id.* at 883, 367 N.W.2d at 704-05. In the course of our research, however, we have observed other states with statutes requiring competitive bids for contracts to repair, maintain, or improve public buildings. See *Secrist v. Diedrich*, 6 Ariz. App. 102, 105, 430 P.2d 448, 451 (1967) (construing an Arizona statute requiring competitive bidding for contract work on a public structure—" 'any building, structure, addition or alteration not exceeding twenty-five hundred dollars in total cost may be constructed without advertising for bids' "). See, also, *Carpet City, Inc. v. Stillwater Municipal Hosp. Auth.*, 536 P.2d 335, 337 (Okla. 1975) ("all public construction contracts [exceeding $2,500 awarded by any public agency for purposes of making any public improvements or constructing any public building, or making repairs to the same] shall be let and awarded in accordance with the provisions of the Act"). Formulation of a statute requiring competitive bids for repair, maintenance, or capital improvement of a county's building, including a courthouse, would involve minimal effort with plain language—a task within the Legislature's province.

The district court was correct in its judgment that the contract in question did not require competitive bids. Because the county board did not violate § 23-324.05, there is no issue of personal liability on the part of the members of the county board concerning the contract questioned by Anderson.

AFFIRMED.

KRIVOSHA, C.J., concurs in the result.