STATE OF NEBRASKA, APPELLEE, V. DONALD E. SCHULZ,
APPELLANT.

378 N.W.2d 165

Filed December 13, 1985.   No. 85-132.

Bradley E. Barrows of Svehla & Barrows, for appellant.

Robert M. Spire, Attorney General, and Jill Gradwohl, for appellee.

KRIVOSHA, C.J., WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Upon a plea of guilty Donald E. Schulz was convicted of second offense driving while intoxicated and was later sentenced to probation for a period of 1 year. Among the terms and conditions of the probation were that his operator's license be suspended for 6 months and that he serve 48 hours in the county jail, abstain from the use of alcoholic beverages, and submit to chemical tests at the request of the probation officer. Five months later, that probation was revoked by the county court as a result of Schulz' refusal to submit to a chemical test requested by his probation officer. By this time Schulz had already spent the 48 hours in jail which was required by his probation. Upon revoking probation the county court also revoked Schulz' operator's license for an additional period of 12 months and sentenced him to 30 additional days in jail, fined

him $500, and assessed costs. The district court affirmed. On appeal to this court Schulz assigns as error (1) the failure of the district court to remand the case to the county court for further proceedings, as a full record was not made of the probation revocation hearing in the latter court, and (2) the affirmance of an illegal sentence, in that it (a) imposed too long a jail term and (b) revoked his operator's license for too long a period. We affirm the revocation of probation but direct modification of the sentence by limiting the suspension of Schulz' operator's license to a period of 1 year from the judgment of conviction. Accordingly, we remand for further proceedings consistent ·with this opinion.

The record establishes that, through inadvertence, only Schulz' testimony was preserved at the revocation hearing. That testimony establishes that after an evening of playing softball, Schulz and a friend went to a local bar where he sat and drank only a nonalcoholic beverage. His probation officer, who was apparently in the bar and saw Schulz, requested that he "accompany her to the sheriff's office" to be tested. He refused because he was embarrassed and felt the request was·"just kind of out of line," as he had not been to the bar since the night he had been arrested. He further admitted that it was "bad judgment" on his part to violate his probation by refusing to submit to a test.

After an earlier presentence report was brought up to date, the county court, noting that Schulz had previously had his probation revoked under his first drunk driving conviction, refused to continue probation on this second conviction.

Neb. Rev. Stat. § 24-541.05 (Cum. Supp. 1984) requires that testimony be preserved in all civil and criminal cases tried in the county court. It appears, however, that we have not heretofore been called upon to decide the effect of failing to make a complete record.

In *People v. Fuentes*, 132 Cal. App. 2d 484, 282 P.2d 524 (1955), the court reporter lost part of his notes. The *Fuentes* court placed the burden on the defendant to show either prejudicial error or that the record was so inadequate that he was unable to show such error. This the defendant was unable to do, and the appellate court, in affirming the trial court, held

the record contained ample evidence to support the verdict.

*People v Wilson*, 96 Mich. App. 792, 293 N.W.2d 710 (1980), reached a similar result, even though the court found the prosecutor was primarily responsible for the gap in the record. In that case the defendant had been identified both in a photographic display and in court. After trial the prosecutor lost three of the nine photographs used in the display, the defendant's being one of these three. At trial defense counsel had objected to the admission of these nine photographs, claiming that a mark on the defendant's photograph singled him out from the others. This was also an issue on appeal. Noting that there was no indication of an improper motive on the part of the prosecutor, the *Wilson* court recognized that an incomplete lower court record could jeopardize the appeal guaranteed by that state's Constitution. It reasoned, however, that

> not every gap in a record on appeal requires reversal of a conviction. When the surviving record is sufficient to allow evaluation of the appeal, the defendant's right is satisfied. [Citations omitted.] Whether a record is sufficient in a particular case will of course depend upon the questions that must be asked of it.

*Id*. at 797, 293 N.W.2d at 712. The court concluded that while its review would have been easier if all the photographs were in the record, the surviving record was still sufficient to show that the trial judge had not abused his discretion in holding that the array was not unduly suggestive.

Citing the same general rule is *People v Audison*, 126 Mich. App. 829, 338 N.W.2d 235 (1983). In *Audison* the court held the incompleteness of the trial transcript had not denied the defendant her right to appeal, since there was reversible error on another ground.

In *People v Cash*, 28 Mich. App. 1, 184 N.W.2d 216 (1970), *rev'd on other grounds* 388 Mich. 153, 200 N.W.2d 83 (1972), a portion of the testimony from the preliminary examination was missing. The remaining record did not disclose that the allegedly false testimony given by the defendant was given under oath, a failure of proof fatal to defendant's perjury conviction. The court of appeals noted that the defendant at

trial had not raised the failure of proof issue and even now on appeal did not assert that such evidence had not been adduced. Finding there was no showing there had been a failure of proof, the court stated that the fortuitous loss of part of the testimony did not require a reversal of the defendant's conviction.

In *McKnight v. State*, 356 N.W.2d 532 (Iowa 1984), a post conviction case, the entire record of the original proceeding was missing. The Iowa court noted that it was the State's statutory duty to provide the defendant with a record of the earlier proceeding. However, nearly 10 years had elapsed since the defendant's guilty plea, and the reporter's notes, which had been stored in the courthouse basement, could not be located. Based on these facts, the *McKnight* court held that

> when the State shows that the original records of a criminal proceeding cannot be produced notwithstanding its good faith effort to make and preserve those records, a postconviction court should allow the State to offer substitute proof of what occurred in those proceedings.

*Id*. at 535.

However, *Parrott v. State*, 134 Ga. App. 160, 214 S.E.2d 3 (1975), *overruled on other grounds*, *Mathis v. State*, 147 Ga. App. 148, 248 S.E.2d 212 (1978), appears to adopt a per se rule that the

> failure of the state to file the transcript, or a correct transcript, even where caused, as here, by its inability to file it (and not by the appellant's fault), effectively denied the appellant his right to appeal because a complete and correct transcript of his trial is not available to him.

*Id*. at 161, 214 S.E.2d at 4. *Parrott* involved a record in which a police officer was quoted as saying the property had a value of 10 cents to 3 dollars. The actual testimony was claimed to be $100 to $300, but the State could not locate the tapes of the hearing, and the reporter had died.

We believe the better reasoned rule to be that a revocation of probation need not be reversed solely and only on the ground that, through inadvertence, a complete record of the hearing resulting in the revocation was not preserved. It is necessary, of course, that a sufficient record exist which establishes the grounds for revocation by clear and convincing evidence.

Schulz argues that the reasonableness of his probation officer's request cannot be reviewed in the absence of the entire record, because he chose not to testify about mitigating circumstances already testified to by others. It is true that *State v. Morgan*, 206 Neb. 818, 295 N.W.2d 285 (1980), holds that a condition of probation requiring the probationer to submit to warrantless searches must be conducted in a reasonable manner. See, also, *State v. Lingle*, 209 Neb. 492, 308 N.W.2d 531 (1981). Assuming, but not deciding, that such a reasonableness requirement exists with respect to the condition in question, it nonetheless cannot be said that the trial court abused its discretion in finding that the evidence clearly and convincingly establishes the probation officer's request to have been a reasonable one, no matter what other circumstances might have been presented. *State v. Clark*, 197 Neb. 42, 246 N.W.2d 657 (1976). After all, Schulz was sitting and drinking something at a bar which sold alcoholic beverages, not at a church social serving only coffee, tea, or milk.

Schulz' first assignment of error is meritless.

We proceed, then, to Schulz' second and final assignment, that the sentence imposed is illegal as requiring him to spend more time in jail than the relevant statute mandates and as depriving him of his operator's license for more than the 1 year directed by statute.

Neb. Rev. Stat. § 29-2268(1) (Reissue 1979) provides: "If the court finds that the probationer did violate a condition of his probation, it may revoke the probation and impose on the offender such new sentence as might have been imposed originally for the crime of which he was convicted."

Neb. Rev. Stat. §§ 39-669.07(2) (Reissue 1984) and 28-106 (Cum. Supp. 1984) set forth the sentence for driving while intoxicated, second offense. Section 39-669.07(2) states in relevant part:

> If such person (a) has had one previous conviction . . . such person shall be guilty of a Class W misdemeanor and the court shall, as part of the judgment of conviction, order such person not to drive any motor vehicle for any purpose for a period of one year from the date of his or her conviction, and shall order that the operator's license of

such person be revoked for a like period.

If the court places such person on probation or suspends the sentence for any reason, the court shall, as one of the conditions of probation or sentence suspension, order such person not to drive any motor vehicle in the State of Nebraska for any purpose for a period of six months from the date of the order and such order of probation shall include as one of its conditions confinement in the city or county jail for forty-eight hours.

Section 28-106 states the mandatory penalty for the second conviction of a Class W misdemeanor is 30 days' imprisonment and a $500 fine.

The original 48 hours of jail time served by Schulz were served as a condition of his probation and not as a part of the mandatory sentence under § 28-106. Thus, the county court was free, under the language of § 29-2268(1) permitting the court to obligate a former probationer to serve such sentence as "might have been imposed originally," to require Schulz to serve, after the revocation of probation, the 30 days of jail time mandated by § 28-106 without regard to the 48 hours he had already served. See, *State v. Osterman*, 197 Neb. 727, 250 N.W.2d 654 (1977), and *State v. Williams*, 194 Neb. 483, 233 N.W.2d 772 (1975), which quote and rely on § 29-2268 in determining that sentences imposed following the revocation of probation were not excessive.

The issue concerning the operator's license suspension is, however, a different matter. Section 39-669.07(2) provides that the court shall, "as part of the judgment of conviction," suspend such person's operator's license "for a period of one year *from the date of his or her conviction* . . . ." (Emphasis supplied.) The record does not show the date of Schulz' conviction, but he was originally sentenced on July 3, 1984, and therefore could not have been convicted any later than that date. Following the revocation of his probation, Schulz was sentenced on December 4, 1984, to a 1-year license revocation beginning December 4, 1984. Obviously, this 1-year suspension did not run "from the date of his conviction" as required by § 39-669.07(2).

The State argues that the division of § 39-669.07(2) into two paragraphs, one for cases in which probation is granted and one for cases in which probation is withheld, indicates that probation revocation cases are not to be governed by the "date of conviction" language found in the paragraph concerned with a sentence other than probation. The paragraph dealing with probation requires that the probationer's license be suspended for 6 months from the date of the order, not from the date of conviction.

The fact remains, however, that § 29-2268(1) limits the sentence imposed following revocation of probation to such "as might have been imposed originally." Since § 39-669.07(2) requires that the 1-year suspension run from the date of conviction, not from the revocation of probation, Schulz' operator's license may not be suspended beyond 1 year from the judgment of conviction; that is to say, 1 year from the date the sentence of probation was imposed. See, *State v. Long*, 205 Neb. 252, 286 N.W.2d 772 (1980); *In re Interest of Wolkow*, 206 Neb. 512, 293 N.W.2d 851 (1980).

*Stewart v. Ress*, 164 Neb. 876, 83 N.W.2d 901 (1957), *modified* 165 Neb. 211, 85 N.W.2d 260, reached a similar result in connection with the revocation of one's operator's license upon the accumulation of 12 violation points within 2 years. It held that the language of then Neb. Rev. Stat. § 39-7,129 (Cum. Supp. 1955), that the revocation be for a period of 1 year "from the date of the latest conviction," meant that the revocation clock began to run from the date of the latest conviction and not from the date the license was actually surrendered to the Director of Motor Vehicles. The statute was later amended to provide that the period of revocation run "from the date of the signing of the order of revocation." 1957 Neb. Laws, ch. 275, § 1, p. 1002. (See present Neb. Rev. Stat. § 39-669.27 (Reissue 1984), to which § 39-7,129 was later transferred and further amended.)

The State observes that requiring the revocation to run from the date of conviction provides a probationer with little or no incentive to live up to the terms of his probation. That argument overlooks, however, that if one is placed on probation, his operator's license is suspended for 6 months

rather than being revoked for 1 year when a sentence other than probation is imposed. (Whether that fact can result in a longer period of suspension than imposed as a condition of probation of course depends upon the timing of a revocation of probation.) There are also the matters of the additional 30 days of jail time and the $500 fine which must be imposed as a part of a sentence other than probation.

More importantly, however, the State's concern is one to be addressed by the Legislature rather than by this court. We are not free to read a meaning into a statute that is not there, nor to read anything direct and plain out of a statute. See, *Anderson v. Peterson, ante* p. 149, 375 N.W.2d 901 (1985); *State v. Stratton,* 220 Neb. 854, 374 N.W.2d 31 (1985). Further, it "is a fundamental principle of statutory construction that a penal statute is to be strictly construed." *State v. Suhr,* 207 Neb. 553, 560, 300 N.W.2d 25, 29 (1980); *State v. Beyer,* 218 Neb. 33, 352 N.W.2d 168 (1984).

This cause is remanded to the district court with the direction that it remand to the county court for further proceedings consistent with this opinion.

JUDGMENT AFFIRMED. SENTENCE AFFIRMED
IN PART, AND IN PART REVERSED AND CAUSE
REMANDED FOR FURTHER PROCEEDINGS.

BOSLAUGH, J., participating on briefs.

BOSLAUGH and WHITE, JJ., concur in the result.

GRANT, J., dissenting in part.

I dissent only from the imposition of a 30-day jail term after the court determined that defendant had violated the terms of his probation. As part of that probation, he had served 2 days in jail before his 30-day jail sentence. The penalty under Neb. Rev. Stat. § 28-106 (Cum. Supp. 1984) for the second conviction of a Class W misdemeanor is 30 days in jail—not 32 days in jail. I agree that a penal statute should be strictly construed, and I would limit defendant's sentence herein to an additional 28 days.