BERNADET MEYERS, APPELLANT, V. VICTOR J. MEYERS, APPELLEE.

383 N.W.2d 784

Filed March 28, 1986.    No. 85-387.

Warren S. Zweiback and Patricia A. Lamberty of Zweiback, Flaherty, Betterman & Lamberty, P.C., for appellant.

Robert J. Hovey of Robinson & Hovey, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

PER CURIAM.

The mother, Bernadet Meyers, appeals from the order dismissing her October 9, 1984, application to modify a prior decree of dissolution. Specifically, the application seeks a $200-per-month increase in the amount of child support the father, Victor J. Meyers, had been ordered to pay her as the custodial parent of the parties' handicapped son, David Joseph; an order requiring the father to continue said payments beyond the son's minority; and other equitable relief. The mother assigns as errors the district court's (1) finding that there had been no material change in circumstances such as to warrant a change in child support payments during the son's minority, (2) holding that it had no authority to continue child support payments beyond the son's minority and thus refusing to accept evidence with respect to the son's needs after majority,

and (3) ruling that the mother was not entitled to the award of an attorney fee. We affirm in part and in part reverse and remand with direction.

The son became 19 years of age, and thus attained majority, on February 9, 1985. The parties' April 1982 decree of dissolution ordered the father to pay child support in the amount of $150 per month for the eldest child of the parties, now an adult, $300 per month for the subject son, who has suffered from the effects of cerebral palsy since birth, and $300 per month for the youngest child, now age 14, "until such time as each child respectively is emancipated, dies, or reaches his majority."

At the beginning of the May 7, 1985, hearing on the modification application, the trial judge stated that he deemed the court to be without authority to award any support after the son attained majority. The trial court therefore ruled that only evidence relevant to the amount of support needed between the date of the application and the son's majority would be admissible.

Dr. William David MacInnes, a licensed clinical psychologist certified in clinical neuropsychology, conducted a neuropsychological evaluation of the son and concluded that the son's primary abnormalities were manifestations of his cerebral palsy. Through an offer of proof, Dr. MacInnes gave his opinion that the son, who had been in a special program at his high school until his senior year because of his handicaps, could not function in a normal college setting and, likewise, could not successfully work at a job. It is Dr. MacInnes' opinion that the son needs to attend a special college program for handicapped students. Dr. MacInnes also stated that the son's cerebral palsy would become more of a handicap as he became older, since he had not developed the skills necessary to meet society's expectations of an adult.

The mother offered to prove that the son's future educational expenses would be approximately $4,225 per year. She also offered to prove that "during the last year or two," the son needed services and eyeglasses which she could not obtain because she lacked funds with which to pay for them. These were as follows, each having the fair and reasonable value

indicated:

| | |
|---|---:|
| Eye examination and glasses | $ 150 |
| Capping of teeth | 3,000 |
| Speech therapy | 3,536 |
| Dermatology services | 300 |
| Total | $6,986 |

Objections that the offers were not relevant were initially sustained, but, later, evidence concerning the $6,986 of needs was received.

The mother's total income for 1982 was $16,472, of which $15,572 came from wages; her 1984 total income of $18,674 included $17,975 from wages. At the time of the hearing she was earning $17,544 per year. She testified to monthly expenses of $1,682.25. An objection to the mother's effort to prove that she owed various creditors $10,409 because of expenses incurred on behalf of the son was properly sustained, as the discussion concerning the second assignment of error demonstrates, because the exhibit did not designate which expenses were incurred prior to the son's 19th birthday.

In 1982 the father had a total income of $45,048, of which $44,903 was from wages; his 1983 total income of $51,841 included wages of $51,268; his 1984 wages totaled $41,465.74; and his 1985 wages amounted to $47,706.60. Other than the child support payments mentioned earlier, the father's monthly expenses total, for himself, his current wife, and her two children, approximately $2,565.

We begin our analysis of the mother's first assignment of error by again noting that child support payments are not subject to modification unless there has occurred since the entry of the prior order a material change of circumstances not in the contemplation of the parties and of such a nature as to require modification in the best interests of the child. *Graber v. Graber*, 220 Neb. 816, 374 N.W.2d 8 (1985); *Tworek v. Tworek*, 218 Neb. 808, 359 N.W.2d 764 (1984); *Helgenberger v. Helgenberger*, 209 Neb. 184, 306 N.W.2d 867 (1981). While we have recognized that the phrase "material change in circumstances" eludes precise definition, we have held that it results from an alteration and passage from one condition to

another. The determination of whether such a change has occurred involves a consideration of whether there has been a change in the financial resources of the parents, the needs of the child for whom support is paid, and whether the change in circumstances is temporary or permanent. *Graber v. Graber, supra*; *Soukup v. Soukup*, 208 Neb. 672, 305 N.W.2d 372 (1981). Questions relating to the modification of child support are initially entrusted to the sound discretion of the trial court, and, while on appeal such matters will be reviewed de novo on the record, the decision of the trial court will be affirmed in the absence of an abuse of its discretion. *Graber v. Graber, supra*.

Although whether there has been a material change of circumstances is a matter necessarily considered on a case-by-case basis, a review of past similar cases is helpful in determining the outcome of the issue in this case.

In *Graber v. Graber, supra*, the mother sought to increase the amount of child support the father was required to pay. This the court refused to do, noting that while the father's gross income had increased, his adjusted gross income had decreased. Further, the mother's adjusted gross income had substantially increased, and the illness which prevented her from working at the time of the modification hearing was temporary in nature. The other alleged changes, an increased mortgage payment and private schooling for the children, were held to be within the parties' contemplation at the time of the decree sought to be modified.

*Soukup v. Soukup, supra,* refused to increase the father's child support obligation where the evidence indicated that neither the father nor the mother had experienced a substantial change in financial circumstances.

An increase in child support was affirmed in *Pfeiffer v. Pfeiffer*, 201 Neb. 56, 266 N.W.2d 82 (1978), in part because of a significant increase in the father's income.

The evidence of the son's special needs during his minority was relevant. Thus, the record establishes that during the period of his minority, the son required services and eyeglasses which were not obtained for him solely because of the mother's inability to pay for them. We conclude that, under the circumstances, it was an abuse of discretion to deny the

equitable relief sought by the mother in that regard. Since the father earns 72 percent of the combined incomes of the parties, we hold that he shall pay 72 percent of the cost of each of the services and the eyeglasses previously itemized, if, as, and when the services and eyeglasses are actually provided to the son and the costs therefor actually incurred. In no event, however, shall the father's liability exceed 72 percent of the costs set forth above. See *Lenz v. Lenz, ante* p. 85, 382 N.W.2d 323 (1986).

The issue presented by the mother's second assignment of error, that is, whether the courts of this state have the power to compel divorced parents to directly support a handicapped child beyond minority, presents an exercise in statutory construction.

The established law of this state is that in matters relating to the dissolution of marriages, courts have only such power as is conferred upon them by statute. *Sosso v. Sosso,* 196 Neb. 242, 242 N.W.2d 621 (1976). *Sosso* also notes that the only statutory authority conferred on district courts to deal with children in dissolution actions, the context in which this case arises, is that contained in Neb. Rev. Stat. § 42-364 (Reissue 1984).

The relevant portion of § 42-364 provides: "When dissolution of a marriage or legal separation is decreed, the court may include such orders in relation to any *minor children* and their maintenance as shall be justified . . . . Subsequent changes may be made by the court after hearing on such notice as prescribed by the court." (Emphasis supplied.)

Neb. Rev. Stat. § 38-101 (Reissue 1984) states that "[a]ll persons under nineteen years of age are declared to be minors," unless they marry before age 19.

The applicable rules of statutory construction are that statutory language will be given its ordinary and popular meaning; a statute is open to construction only if it is ambiguous. *Anderson v. Peterson,* 221 Neb. 149, 375 N.W.2d 901 (1985). Where the words of a statute are plain, direct, and unambiguous, no interpretation is necessary to ascertain their meaning. It is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language; neither is it within the province of a court to read anything plain, direct, and unambiguous out of a statute. *State*

*v. Schulz*, 221 Neb. 473, 378 N.W.2d 165 (1985); *Sorensen v. Meyer*, 220 Neb. 457, 370 N.W.2d 173 (1985).

Section 42-364 is simply not open to construction; it clearly and unambiguously confers authority to compel divorced parents to support their minor offspring, but it just as clearly and unambiguously confers no authority to compel such parents to directly support their adult offspring. In effect, the mother asks us to read the word "minor" out of the statute and to add words such as to include adult children who are handicapped to the extent they cannot support themselves. More than that, she wishes us to write into the statute a requirement that divorced parents maintain their handicapped offspring in an institution of higher learning to an indefinite age. This we cannot do; as the foregoing rules of statutory construction demonstrate, it is the function of courts to apply statutes, not to enact them.

In an effort to overcome the language of § 42-364, the mother places heavy reliance on the fact that in *Campbell v. Campbell*, 202 Neb. 575, 276 N.W.2d 220 (1979), this court affirmed a decree which required that the father make child support payments for a blind daughter "until she becomes self-supporting." *Id*. at 578, 276 N.W.2d at 222. The mother, however, overlooks the important part of the *Campbell* opinion in that regard. The opinion specifically notes that the father made no complaint concerning that requirement. We know of nothing which prevents any parent from voluntarily supporting his or her adult offspring, handicapped or otherwise. The relevant point is that § 42-364 does not compel the direct support of an adult handicapped child.

*Kennedy v. Kennedy*, 205 Neb. 363, 287 N.W.2d 694 (1980), involved, in part, the custody of the parties' son who attained majority a month before the case was heard in this court. It was held that, in view of that fact, all disputes concerning his custody had become moot and therefore needed no discussion.

*Waldbaum v. Waldbaum*, 171 Neb. 625, 107 N.W.2d 407 (1961), rejected a requirement that funds be held in trust beyond the age of the children's majority. Although noting by way of dicta that nothing was shown which would require support of the children beyond their minority, this court

nonetheless reached its decision on the basis that "the father's legal duty to support his child ceases when the child comes of age." *Id*. at 637, 107 N.W.2d at 415.

In a further effort to support her position, the mother refers us to a number of cases from other jurisdictions which, in a variety of circumstances, impose upon a parent, based upon a statutory or judicially decreed duty, an obligation to support an adult handicapped child unable to support himself or herself. E.g., *Castle v. Castle*, 15 Ohio St. 3d 279, 473 N.E.2d 803 (1984); *Sininger v. Sininger*, 300 Md. 604, 479 A.2d 1354 (1984); *Ex Parte Brewington*, 445 So. 2d 294 (Ala. 1983); *Young v. Young*, 609 S.W.2d 758 (Tex. 1980); *Dehm v. Dehm*, 545 P.2d 525 (Utah 1976); *Wells v. Wells*, 227 N.C. 614, 44 S.E.2d 31 (1947).

As the earlier discussion reveals, however, a literal reading of § 42-364 establishes that the district court was correct in determining that it was without authority in this proceeding to order the father to pay child support to the mother on behalf of the son once the son attained majority. Thus, the trial court correctly excluded the mother's offer to prove the cost of the son's future educational expenses.

What authority, if any, may exist in other proceedings to compel a parent to support a handicapped adult child is a matter not before us. We do note that the statutory duties with respect to such children appear to be limited. Neb. Rev. Stat. § 68-214 (Cum. Supp. 1984) provides that if the parents are able, they shall reimburse the Department of Social Services for public assistance to a disabled child. Neb. Rev. Stat. § 83-363 (Reissue 1981) and § 83-366 (Supp. 1985) provide for assessment to the parents of certain costs, or so much thereof as they are able to pay, incurred by a child admitted to a state institution while a minor.

The mother's third complaint, that she was awarded no attorney fee, must also be held to be without merit.

The awarding of attorney fees in a hearing on modification of a dissolution decree is a matter within the trial court's initial discretion and, while reviewed de novo in this court, will be affirmed in the absence of an abuse of that discretion. *Lainson v. Lainson*, 219 Neb. 170, 362 N.W.2d 53 (1985). Among the

factors to be evaluated in the awarding of such fees is the result obtained. *Guggenmos v. Guggenmos*, 218 Neb. 746, 359 N.W.2d 87 (1984). It has been held that an attorney fee will ordinarily be denied where no reasonable justification appears for the position taken by the party claiming entitlement to such a fee. *Hohensee v. Hohensee*, 182 Neb. 388, 154 N.W.2d 878 (1967). While we conclude the trial court erred in not granting the mother partial relief, yet there is no reasonable justification for the position taken by her with respect to the father's duty to provide support beyond the son's minority, a major portion of her suit. We therefore cannot conclude that the trial court abused its discretion in refusing to award the mother an attorney fee. Neither do we consider that she is entitled to the award of an attorney fee in this court.

The decree of the trial court is affirmed in part and in part reversed and the cause remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTION.

CAPORALE, J., concurring in part, and in part dissenting.

I agree fully with the majority's resolution of, and all it has to say with respect to the issue presented by, the mother's second and third assignments of error.

However, I disagree with the majority's resolution of the mother's first assignment of error. Its holding that the trial court abused its discretion in refusing to modify the earlier decree so as to compel the father to pay in the future for needs which could have been but were not met during the son's minority is, in my view, contrary to the principles of law previously announced by this court and restated in the majority opinion.

While the mother's dedication to her son's well-being as well as her disinclination to incur expenses which she could not pay is to be appreciated and applauded, her delay in seeking relief ought not be ignored, thus permitting her to extend the time during which the father remains responsible under the decree of dissolution.

Two years and 10 months elapsed from the time of the original decree to the son's majority, all but 4 months of which

elapsed before the mother filed the application now before us. She should have sought relief as soon as she became aware of the fact that the son had needs she could not meet with the child support awarded her by the decree. I fear the majority opinion will lead to filings by custodial parents shortly before a child reaches majority to require noncustodial parents to pay for services after a child reaches majority which could and should have been provided during the child's minority. It seems to me that such a practice would in part defeat the court's holding with respect to the second issue in this case. Of even greater importance, however, is the fact that delay does not serve a child's best interests. Needs which can be met ought to be met as they arise.

There are further substantive problems with the majority's resolution of the mother's first assignment of error. Her testimony that the needs arose "during the last year or two" can be interpreted to mean either that the needs arose during the last year or two prior to the son's reaching majority or that the needs arose during the last year or two prior to the May 7, 1985, hearing on her application. If the first interpretation is the fact, it seems to me legally incorrect, given the proximity of the period to the entry of the decree and the absence of evidence to the contrary, to hold that the needs were not within the contemplation of the parties when their marriage was dissolved. If the second interpretation is the fact, then it was the mother's burden to show that no part of those needs arose after the son's majority. In the absence of such evidence the trial court correctly concluded that the mother's testimony was not relevant.

Moreover, there is a procedural problem with the majority's opinion. Paragraph 5 of the application alleges: "That the changes as aforesaid amount to such a change in circumstance as to merit an increase in child support for the benefit of David Joseph Meyers to the sum of $500.00 per month." The allegations of the application relate to an increase in future child support payments, not to the reimbursement of specific expenses not yet incurred. Thus, requiring the father to pay future expenses grants the mother relief which is extraneous to the issues presented by this case. The mother's prayer for "such

other and further relief as the Court deems just and equitable" is just that, a prayer for relief within the issues framed by the allegations of the application. See *Waite v. Samson Dev. Co.,* 217 Neb. 403, 348 N.W.2d 883 (1984), which states that while a prayer for relief is part of a petition, it is not a portion of the statement of fact required to constitute a cause of action. The issues to be tried must be formed by the pleadings, and a judgment rendered thereon must respond to the issues raised by the pleadings. *Muller Enterprises, Inc. v. Gerber,* 178 Neb. 463, 133 N.W.2d 913 (1965). Only in that way may a party know what he or she is expected to answer and what his or her potential liability might be. The result reached by the majority deprives the father of that fundamental protection.

I would affirm the trial court's decree in its entirety.

KRIVOSHA, C.J., and COLWELL, D.J., Retired, join in this concurrence and dissent.