In this case, Welsh never filed a petition in intervention. Although Welsh claims to have filed the equivalent in a written motion, no such motion appears in the record before this court. At the time of his oral motion, Welsh was not a party to the suit. Furthermore, Welsh stated at the hearing that he no longer represented Wisniewski. Lacking subject matter jurisdiction, the court erred in deciding Welsh's oral motion for payment. We have stated that a ruling made in the absence of subject matter jurisdiction is a nullity.[5] We therefore vacate the district court's order granting Welsh's oral motion and dismiss the appeal.

ORDER VACATED, AND APPEAL DISMISSED.

MILLER-LERMAN, J., participating on briefs.

---

[5] *Spady v. Spady*, 284 Neb. 885, 824 N.W.2d 366 (2012); *Hunt v. Trackwell*, 262 Neb. 688, 635 N.W.2d 106 (2001); *In re Estate of Andersen*, 253 Neb. 748, 572 N.W.2d 93 (1998); *Billups v. Scott*, 253 Neb. 287, 571 N.W.2d 603 (1997).

---

JASON M. BRUNO, APPELLANT, V. METROPOLITAN UTILITIES
DISTRICT ET AL., APPELLEES, AND NORTHERN NATURAL
GAS COMPANY, INTERVENOR-APPELLEE.

___ N.W.2d ___

Filed February 28, 2014.    No. S-13-212.

1. **Motions to Dismiss: Appeal and Error.** A district court's grant of a motion to dismiss is reviewed de novo.
2. **Motions to Dismiss: Pleadings: Appeal and Error.** When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion.
3. **Statutes: Appeal and Error.** To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below.
4. **Contracts: Legislature.** Competitive bids and public letting are unquestionably a matter of legislative prerogative.
5. **Statutes: Appeal and Error.** The language of a statute is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

6. **Statutes.** If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning.

7. ____. Where general and special provisions of statutes are in conflict, the general law yields to the special.

8. **Statutes: Appeal and Error.** An appellate court will not read into a statute a meaning that is not there.

9. **Motions to Dismiss: Pleadings.** To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim to relief that is plausible on its face. In cases in which a plaintiff does not or cannot allege specific facts showing a necessary element, the factual allegations, taken as true, are nonetheless plausible if they suggest the existence of the element and raise a reasonable expectation that discovery will reveal evidence of the element or claim.

Appeal from the District Court for Douglas County: Timothy P. Burns, Judge. Affirmed.

James D. Sherrets, Robert S. Sherrets, and Diana J. Vogt, of Sherrets, Bruno & Vogt, L.L.C., for appellant.

Ronald E. Bucher for appellees Metropolitan Utilities District et al.

Gregory C. Scaglione and Minja Herian, of Koley Jessen, P.C., L.L.O., and Greg Porter and James R. Talcott for intervenor-appellee Northern Natural Gas Company.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, and Cassel, JJ.

Stephan, J.

The issue presented in this appeal is whether Nebraska law requires a metropolitan utilities district to seek competitive bids before entering into a contract with another entity to provide interstate natural gas transportation services. The district court for Douglas County determined that there was no such requirement. We agree, and therefore affirm.

## BACKGROUND

Metropolitan Utilities District (M.U.D.) is a political subdivision which distributes water and natural gas to residents and businesses in the Omaha metropolitan area.[1] It was established

---

[1] Neb. Rev. Stat. § 14-101 and § 14-2101 (Reissue 2012).

and is governed by Nebraska law.[2] M.U.D. contracts with Northern Natural Gas Company (Northern) for natural gas pipeline transportation services to bring natural gas to the Omaha metropolitan area.

On November 7, 2012, M.U.D. and Northern entered into a contract with an effective date of January 1, 2013. This contract was an amendment to a preexisting contract between M.U.D. and Northern. The new contract provided that Northern would provide interstate natural gas transportation service to M.U.D. for 20 years for an amount in excess of $300 million.

Jason M. Bruno, a ratepayer and taxpayer in Omaha, obtains services for gas, water, and sewer from M.U.D. He filed a complaint against M.U.D. and its board members seeking a declaratory judgment that the 2012 amendment to the contract between M.U.D. and Northern be found void or voidable, terminated, or in the alternative, equitably adjusted. He also asked that M.U.D. be required to bid for all work in accordance with state law. Bruno alleged that M.U.D. failed to seek bids for the contract in violation of statutory and common law requirements. Specifically, he alleged that § 14-2121 requires M.U.D. to seek bids for all contracts for work not performed by M.U.D. employees. He also alleged that the contract resulted in M.U.D.'s paying more than if the contract had been let for bid, thus causing increased rates for ratepayers and taxpayers.

Northern was granted leave to intervene, and both Northern and M.U.D. filed motions to dismiss, to strike, and of misjoinder. The district court determined that the plain language of § 14-2121 does not require mandatory bidding; rather, it grants M.U.D. discretionary authority to decide whether to seek bids for its contracted projects. In addition, the court determined that § 14-2125 expressly allowed M.U.D. to contract with other companies operating gas distribution systems for the transportation, purchase, sale, or exchange of available gas supplies with no requirement that such contracts or agreements must be let for bidding. The district court concluded Nebraska

---

[2] Neb. Rev. Stat. §§ 14-2101 to 14-2157 (Reissue 2012 & Supp. 2013).

law does not require or mandate that M.U.D. seek bids for the contract it entered into with Northern for natural gas pipeline services, sustained the motions to dismiss, and dismissed Bruno's complaint.

## ASSIGNMENTS OF ERROR

On appeal, Bruno assigns the district court erred in (1) determining that M.U.D. was not statutorily required to seek bids for all contracts not performed by M.U.D. employees, (2) interpreting § 14-2125(1) in isolation rather than as part of a statutory scheme, (3) failing to find that strong public policy requires competitive bidding, (4) failing to address all of his claims, and (5) dismissing the complaint.

## STANDARD OF REVIEW

[1,2] A district court's grant of a motion to dismiss is reviewed de novo.[3] When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion.[4]

[3] To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below.[5]

## ANALYSIS

M.U.D. was created by the Legislature, and the Legislature has plenary power over M.U.D.[6] The Legislature exercised this power by enacting §§ 14-2101 to 14-2157. M.U.D. is governed by an elected board of directors[7] which has "general charge,

---

[3] *Estate of Teague v. Crossroads Co-op Assn.*, 286 Neb. 1, 834 N.W.2d 236 (2013).

[4] *Id.*

[5] *Butler County Dairy v. Butler County*, 285 Neb. 408, 827 N.W.2d 267 (2013); *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012).

[6] *Evans v. Metropolitan Utilities Dist.*, 187 Neb. 261, 188 N.W.2d 851 (1971).

[7] § 14-2102.

supervision, and control of all matters pertaining to the natural gas supply . . . of the district."[8] The board has the power and authority to determine and fix natural gas rates.[9] When M.U.D. is supplied with natural gas by any limited liability company or corporation, the board has the power and authority to fix rates and regulate the conditions of service.[10]

[4-6] The issue presented in this appeal is whether M.U.D. is legally required to seek competitive bids before entering into a contract for interstate transmission of natural gas. Competitive bids and public letting are unquestionably a matter of legislative prerogative.[11] Therefore, we focus our inquiry on two statutes which apply to the authority of a metropolitan utilities district to enter into contracts. We do so mindful of the principle that the language of a statute is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[12] Also, if the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning.[13]

The first statute, § 14-2121, provides:

The board of directors shall have authority to receive bids for all work which it may desire to have done by contract or for material and supplies to be used in connection with such work, which bids shall be received after reasonable advertisement therefor and when opened shall be read in public session. The board of directors may award contracts based upon the bids to the lowest responsible bidders, except that the board of directors may, for such reasons as appear to it good and substantial, reject all bids. The board of directors shall have power and authority to do all of such work and to purchase materials

---

[8] § 14-2113.

[9] § 14-2114.

[10] § 14-2119.

[11] *Anderson v. Peterson*, 221 Neb. 149, 375 N.W.2d 901 (1985).

[12] *Robertson v. Jacobs Cattle Co.*, 285 Neb. 859, 830 N.W.2d 191 (2013).

[13] *Watkins v. Watkins*, 285 Neb. 693, 829 N.W.2d 643 (2013).

and supplies without advertising for bids and without entering into contract with any other persons or companies in relation thereto.

The district court determined that this statute does not require competitive bidding, but, rather, grants M.U.D. the discretion whether or not to go through a bidding process.

[7] M.U.D. argues that the plain meaning of the phrase "shall have authority to receive bids" in the first sentence of § 14-2121 and the phrase "may award contracts" in the second sentence support the district court's conclusion that the statute allows but does not require competitive bidding. M.U.D. notes that when the Legislature has imposed a competitive bidding requirement, it has used markedly different language. For example, with respect to certain public power and irrigation district contracts exceeding a specified amount, the Legislature has required that "no such contract shall be entered into without advertising for sealed bids."[14] Likewise, in a statute applicable to cities of the first class, the Legislature provided that "[a]dvertisements for bids shall be required for any contract costing over thirty thousand dollars" entered into for specified public improvements.[15] Although § 14-2121 includes no similar language mandating competitive bidding, Bruno argues that when the first two sentences of the statute are considered along with the third sentence, the statute must be read to mean that M.U.D. is required to let competitive bids on all work which is not performed by its own employees. We need not resolve this dispute with respect to the meaning of § 14-2121, because we conclude that the issue before us in this case is controlled by § 14-2125(1), which provides:

> A metropolitan utilities district may enter into agreements with other companies or municipalities operating gas distribution systems and with gas pipeline companies, whether within or outside the state, for the transportation, purchase, sale, or exchange of available gas supplies or propane supplies held for peak-shaving purposes, so as to

---

[14] Neb. Rev. Stat. § 70-637(2) (Reissue 2009).

[15] Neb. Rev. Stat. § 16-321(4) (Reissue 2012).

realize full utilization of available gas supplies and for the mutual benefit of the contracting parties.

In contrast to the general provisions of § 14-2121, this statute pertains specifically to the type of contract at issue in this case. Where general and special provisions of statutes are in conflict, the general law yields to the special.[16]

[8] Section 14-2125(1) makes no mention of competitive bidding. An appellate court will not read into a statute a meaning that is not there.[17] Formulation of a statutory requirement for competitive bids would involve minimal effort with plain language[18]—a task within the province of the Legislature. Moreover, § 14-2125(1) authorizes M.U.D. to enter into agreements for the "transportation, purchase, sale, or exchange" of gas supplies based upon factors other than the lowest cost, namely, "full utilization of available gas supplies and for the mutual benefit of the contracting parties." The district court correctly determined that there was no statutory competitive bidding requirement with respect to the contract at issue.

Bruno also contends that the district court erred in failing to find that strong public policy considerations require competitive bidding. But that determination was not for the district court, or this court, to make. Rather, the "Legislature is the appropriate forum for resolution of questions concerning Nebraska's policy on the . . . relationship between competitive bidding and expenditures of public funds."[19] The role of the courts is to construe applicable statutes to determine whether the Legislature has imposed a competitive bidding requirement in a specific context.[20] In this case, we agree with the district court that it did not, and that concludes our inquiry.

Bruno argues that the district court failed to address his contention that the contract in question was "ultra vires."

---

[16] See *J.M. v. Hobbs*, 281 Neb. 539, 797 N.W.2d 227 (2011).

[17] *Holdsworth v. Greenwood Farmers Co-op*, 286 Neb. 49, 835 N.W.2d 30 (2013).

[18] *Anderson v. Peterson, supra* note 11.

[19] *Id.* at 156, 375 N.W.2d at 906.

[20] *Id.*

Although Bruno's complaint included a general allegation that the contract was "ultra vires, illegal, and void," he alleged no facts to support this claim other than alleged noncompliance with a statutory competitive bidding requirement. He sought declaratory relief based on a single specific allegation: that the M.U.D. contract with Northern and those which preceded it "have been entered into without complying with the bidding statutes and common law bidding requirements." As we have noted, the district court correctly determined that there was no statutory requirement for competitive bidding and properly declined to judicially impose such a requirement on public policy grounds. We conclude that the district court disposed of all claims raised by Bruno's complaint.

[9] Finally, Bruno argues that the district court erred in dismissing his complaint. To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim to relief that is plausible on its face.[21] In cases in which a plaintiff does not or cannot allege specific facts showing a necessary element, the factual allegations, taken as true, are nonetheless plausible if they suggest the existence of the element and raise a reasonable expectation that discovery will reveal evidence of the element or claim.[22] Bruno's claim rested entirely on the single issue of whether the law required M.U.D. to seek competitive bids before entering into the agreement with Northern. The district court correctly determined that it did not. Bruno's claim to relief was not plausible on its face, because its legal premise was incorrect. The district court did not err in dismissing his complaint.

## CONCLUSION

For the reasons discussed, the judgment of the district court is affirmed.

AFFIRMED.

MILLER-LERMAN, J., not participating.

---

[21] *Doe v. Board of Regents*, 280 Neb. 492, 788 N.W.2d 264 (2010).

[22] *Id*.